PER CURIAM.
Plaintiff ML Plainsboro Limited Partnership, one partner of which is the brokerage firm of Merrill Lynch & Co., Inc. (Merrill Lynch), owns two properties in the Township of Plainsboro. An office building occupied by Merrill Lynch and its various affiliates and subsidiaries (hereinafter referred to as the “Administrative Office Building”) is located on one property. A conference and training center (hereinafter referred to as the “Conference Training Center”), which Merrill Lynch uses for training sessions and meetings for its own personnel and which outside corporations and organizations may use for the same purpose by paying a fee to plaintiff, is located on the other property. Both buildings were constructed in the early 1980s, and plaintiff has paid real estate taxes on the properties to the defendant Township of Plainsboro (Plainsboro) for more than a decade.
On June 4, 1992, the Plainsboro tax assessor sent letters to plaintiff regarding each of the properties, which stated in pertinent part:
To comply with an order from the Middlesex County Board of Taxation to bring its assessment to 100% of Market Value, the Township of Plainsboro has retained the services of Appraisal Surveys, Inc., a professional Appraisal Company to conduct a revaluation program.
As Township Assessor, I am required by both law and Contract with the Appraisal Company to obtain information from income-producing properties. In *254 accordance with N.J.S.A. 54:34 [sic] it is requested that you complete the enclosed rental schedule, operating expense statement and copies of all leases in force for each calendar year 1990 and 1991.
It is also requested that all lease addendums and other agreements be attached to the appropriate leases, along with any 1992 projections on information that you feel may be pertinent to this office in valuing your property for the 1993 tax year.
Such information will be considered by this office and Appraisal Surveys, Inc. in determining the assessment for your property for the 1993 tax year. If your property is not subject to leases in whole, or in part, please state so on the forms and the areas that are not subject to leasing agreements.
The value of income producing property rests heavily on its ability to produce income, therefore this information is essential in the final value estimation process.
Accompanying each of the letters was one form entitled, “Annual Statement of Income and Expenses for Income Producing Properties,” and another form containing a rental schedule.
On June 9, 1992, the day after plaintiff received the tax asses- . sor’s letters, Harry J. Ferguson, Merrill Lynch’s First Vice President for Corporate Real Estate, replied by a letter which stated:
With reference to your letters dated June 4 on the above properties, please be advised that these are not income producing properties.
Merrill Lynch is the sole tenant and has no lease arrangement with outside parties.
The tax assessor subsequently made 1993 assessments of $102,-700,000 upon the property containing the Administrative Office Building and $54,537,800 upon the property containing the Conference Training Center.
Plaintiff challenged these assessments by filing this action in the Tax Court. After discovery was conducted, Plainsboro moved to dismiss the complaint on the ground that Ferguson’s June 9,1992 letter constituted a failure or refusal to respond to the tax assessor’s request for information within the intent of N.J.S.A. 54:4r-34, which precludes an unresponsive taxpayer from appealing an assessment. In the alternative, Plainsboro sought an order barring plaintiff from relying upon the income approach in valuing the properties.
In his certification submitted in opposition to this motion, Ferguson asserted that when he received the tax assessor’s June 4, 1992 letters and accompanying forms, he concluded “[biased *255 upon the references therein to leases and rental income, ... that the request relative to income producing properties was for information regarding leases and rental income relating to the Properties.” Ferguson further indicated that “[b]ecause there was then and still are no leases on the Properties, and since there was then no rental income derived from the Properties, I responded to the June 4, 1992 Letter by letter dated June 9, 1992, stating that the Properties were not income producing and that Merrill Lynch was the sole tenant without any lease arrangements with outside parties.” Ferguson also stated that he had replied to the tax assessor’s letters without first conferring with an attorney.
The Tax Court concluded in a written opinion that plaintiff had failed to satisfy its obligations under N.J.S.A. 54:4-34 to provide a “full and true account” of the income from its properties. The court’s opinion states in part:
Plaintiffs argument that it was misled by the assessor’s June 4, 1992 c. 91 request and the accompanying forms is not convincing. There are two reasons why the Legislature required the assessor to enclose a copy of the full text of c. 91 with the assessor’s request for income data. The first was to make certain that the taxpayer would be fully informed with respect to the information that is required to be supplied to the assessor. The second reason was to ensure that the owner of income-producing property would be fully aware of the sanction to be imposed should the owner fail to comply with the request. In this ease, plaintiff could have complied with the assessor’s June 4, 1992 request to the extent required by the statute. Moreover, the assessor’s request and accompanying forms would not cause a reasonably prudent business person to conclude that the statute was not applicable to the subject properties. The mere mention of leases and rental income in the assessor’s request does not reasonably lead to the conclusion that only leased rental property is income producing within the meaning of c. 91. Additionally, although the forms which were included with the assessor’s request may not have been a good fit, a close examination reveals they could easily have been completed.
Thus, the court concluded that plaintiff was only entitled to a “reasonableness hearing” in accordance with Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1,10-12, 547 A.2d 691 (1988). However, plaintiff subsequently waived the opportunity for such a hearing. Accordingly, the court entered final judgment dismissing the complaint with prejudice.[1] This appeal follows.
*256 N.J.S.A. 54:4-34, commonly known as “Chapter 91,” see Great Adventure, Inc. v. Township of Jackson, 10 N.J.Tax 230, 231 n. 1 (App.Div.1988), provides in pertinent part:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, ... and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, ... or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request, ... or shall have rendered a false or fraudulent account . . . . In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
The purpose of this statute is “to afford the assessor access to fiscal information that can aid in valuing the property.” SKG Realty Carp. v. Wall Township, 8 N.J.Tax 209, 211 (App.Div.1985). However, the statute is solely permissive. The tax assessor may seek information from a taxpayer regarding an income producing property in accordance with N.J.S.A. 54:4-34 or may refrain from exercising the authority provided thereunder. An assessor also may confine an information request only to certain information subject to disclosure under N.J.S.A. 54:4-34 rather than exercising his full statutory authority. Thus, an assessor could decide that the only kind of information relating to income producing properties which is sufficiently useful to aid in the valuation process is information relating to rents produced by properties leased to third parties. Therefore, in determining whether a taxpayer is barred from appealing an assessment because it failed to respond adequately to a tax assessor’s request for information pursuant to N.J.S.A. 54:4-34, the county board of taxation or the Tax Court must decide not simply whether the *257 taxpayer’s property is “income producing” but also whether the assessor’s request would be understood by the average owner of an income producing property to require disclosure of the information which the taxpayer has allegedly withheld.
We assume for the purpose of this appeal, without deciding, that both the Conference Training Center and the Administrative Office Building are income producing properties within the intent of N.J.S.A. 54:4-34. However, we conclude that the tax assessor’s June 4, 1992 letters and the accompanying forms did not notify plaintiff that it was required to submit income information other than the rents derived from leased properties in sufficiently clear and unequivocal terms to justify the harsh sanction of an order barring appeals from the assessments.
N.J.S.A. 54:4-34 confers authority upon the tax assessor to determine the scope of information to request from a taxpayer and a corresponding duty to give the taxpayer clear and unequivocal notice of the specific information which must be submitted. Tax assessors are experts in the field of real estate valuation, see N.J.S.A. 54:1-35.25, while the owners of income producing properties include not only substantial business enterprises such as Merrill Lynch but also small business persons who may have difficulty reading complex and confusing forms and may lack ready access to legal advice. Consequently, “the assessor’s request notice to the taxpayer must be clear cut.” Summerton Shopping Plaza v. Manalapan Township, 15 N.J.Tax 173, 177 (App.Div.1995). Moreover, if there is room for reasonable doubt as to whether an average owner of an income producing property would understand an assessor’s request to include a particular kind of information, the benefit of that doubt should be given to the taxpayer. Cf. Great Adventure, Inc. v. Township of Jackson, supra, 10 N. J.Tax at 233 (noting that “the severity of the penalty for noncompliance provided for by N.J.S.A. 54:4-34, namely, the taxpayer’s loss of his right to appeal the assessment, requires a strict construction of the statute”); see also SAIJ Realty, Inc. v. Town of Kearny, 8 N.J.Tax 191, 196-97 (Tax Ct.1986).
*258 The tax assessor’s cover letters to plaintiff appear to seek information solely about properties which are leased, or available to be leased, to third parties. The letter requests the taxpayer to “complete the enclosed rental schedule, operating expense statement and copies of all leases in force for each calendar year 1990 and 1991.” The letter also requests that “all lease addendums and other agreements be attached to the appropriate leases.” Finally, the letter states that “[i]f your property is not subject to leases in whole, or in part, please state so on the forms and the areas that are not subject to leasing agreements.” However, the letter does not indicate that a taxpayer is required to report not only rental income from leased properties but also other income derived in whole or in part from business operations conducted on the property. Nor does the letter indicate that a taxpayer must report charges for expenses between affiliated companies.
The cover letter’s focus upon rental income from leased properties is reinforced by the fact that one of the two enclosed forms is a rental schedule, divided into twelve columns, which requires the taxpayer to report the “Type of Rental Space,” “Location of Rental Space,” “Status of Occupancy,” “Net Square Feet of Rental Space,” “Base Annual Rental Per Square Foot,” “Annual Real Estate Tax Contribution,” “Annual Utilities Contribution,” “Annual Common Area & Maintenance Contribution,” “Annual Insurance Contribution,” “Lease Dates,” “Lease Options,” and ‘Tear of Last Rental Revision.” The second enclosed form, which is entitled, “Annual Statement of Income and Expenses for Income Producing Properties,” also supports plaintiffs argument, because it includes blanks for the taxpayer to report the “Total number of rental units,” “Annual vacancy percentage” and “Is rental of space subject to lease?” Another part of the form seeks information concerning “Gross Base Possible Rentals,” which the form indicates is “the total annual income from the rental of space assuming that all space is 100% occupied,” and “Other Income,” which the form indicates is “income generated by operation of the real property, but not derived directly from space rental,” such as “services sold to tenants, income from vending machines, signs on buildings, phones, parking fees, etc.” Thus, both the tax asses *259 sor’s cover letters and the accompanying forms appear designed to elicit information regarding properties which are actually leased or available to be leased to third parties rather than properties which are exclusively used by the taxpayer and its affiliated companies for their own business operations or which generate business income other than rental income.
Moreover, the term “income producing properties,” used in both the tax assessor’s cover letters and one of the accompanying forms, is commonly understood to refer solely to property which generates rental income. As we noted in Great Adventure, Inc. v. Township of Jackson, supra:
[Tjhe statutory phrase “income-producing property” is congruent with the concept of rental income. See SKG Realty Corp. v. Wall Tp., 8 N.J.Tax 209 (App.Div.1985), in which we held that the statute applied where the owner corporation had leased the property to a sister corporation for a stated rent, even though the taxpayer argued that because of the corporate relationship, the rent was noneconomic. Moreover, the Tax Court has expressly held that only rental income meets the definition of income-producing. See Monsanto Co. v. Kearny, 8 N.J.Tax 109 (Tax Ct.1986).
We agree with the Tax Court, both as expressed by Judge Crabtree in Monsanto and Judge Kimm in his oral opinion in this case, that the phrase “income-producing property” must be construed as a term of art in accordance with the understanding commonly ascribed to it by the business, investment, and real estate community. As Judge Rimm pointed out, in the real estate appraisal field, the term income-producing property is generally limited to property producing rental income.
[10 N.J.Tax at 232.]
Thus, the impression conveyed by the tax assessor’s cover letters that her information request was limited to properties which are leased or available to be leased to third parties is reinforced by the restrictive meaning generally accorded the term “income producing property” in the real estate appraisal field.
Finally, we reject the Tax Court’s view that because the assessor, in conformity with the final sentence of N.J.S.A. 54:4-34, appended the statute itself to her letter, plaintiff should have understood that the assessor’s information request related to any property which is “income producing,” regardless of whether the property is leased to a third party. We are satisfied that since the assessor’s letter did not incorporate the pertinent language of N.J.S.A. 54:4-34 by reference, a taxpayer could reasonably as *260 sume that the text of the statute was quoted simply to set forth the authority for the information request.
Therefore, we conclude that the average owner of an income producing property could have reasonably read the assessor’s cover letters and accompanying forms as only seeking information regarding properties which were leased or available to be leased to third parties. Read in this manner, Ferguson’s response that “Merrill Lynch is the sole tenant and has no lease arrangement with outside parties” and that the properties “are not income producing” did not constitute a failfure] or refus[al] to respond to the assessor or a “false or fraudulent” response. Although plaintiff received payments from third parties for the use of the Conference Training Center, those payments did not constitute rental income from leased properties. Consequently, the Tax Court erred in ruling that plaintiff could not appeal the 1993 assessments on its properties.
Accordingly, the judgment of the Tax Court is reversed and the case is remanded for trial.

 Plaintiff also filed complaints challenging both the 1994 and 1995 tax assessments on its properties. The Tax Court consolidated the three actions but *256 subsequently severed this action after entry of the order declaring that plaintiff violated Chapter 91 with respect to the 1993 assessments. We were advised at oral argument that the Tax Court has stayed proceedings in the appeals from the 1994 and 1995 assessments pending the outcome of this appeal and a related Law Division action.