732 A.2d 564 (1999)
CASCADE CORPORATION d/b/a The Lennox Corporation, Plaintiff-Appellant,
v.
TOWNSHIP OF MIDDLE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1999.
Decided July 22, 1999.
*565 Kenneth H. Zucker for plaintiff-appellant (Pepper Hamilton, attorneys; Mr. Zucker, on the brief).
Paul Tannenbaum, Trenton, for defendant-respondent (Peter J. Zipp, attorney; Mr. Zipp, of counsel and, with Michael J. O'Donnell, on the brief).
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
Cascade Corporation (Cascade) filed two real property tax appeals, claiming tax-exempt status with respect to two properties in the Township of Middle (Township). The complaints sought judgment:
1. Declaring that the property is entitled to an exemption from real estate taxation under New Jersey law; and
2. Setting the assessment on the property at zero for the 1997 tax year; and
3. Ordering the assessor of the Township of Middle to remove the property from the tax rolls and maintain the exemption on the property[.]
The Township moved to dismiss each of the complaints. N.J.S.A. 54:4-34 (Chapter 91)[*] was cited as the basis for the motions. The Township contended that because Cascade had not provided income and expense information requested by the tax assessor in connection with valuation of the properties, as required by Chapter 91, it had waived its right to challenge the assessor's ruling with regard to its tax exempt status, and could not appeal from the valuation and assessment of the properties.
Judge Rimm agreed with the Township's contention, expressing his reasons in an oral opinion rendered on October 31, 1997. He then offered Cascade the opportunity for a reasonableness hearing as to the 1997 assessment of the properties involved. See Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 10-12, 547 A.2d 691 (1988). Thereafter, Cascade advised the Tax Court that it had elected not to proceed with a reasonableness hearing. Accordingly, the Tax Court entered judgments dismissing both tax appeal complaints. We consolidated Cascade's appeals from those judgments, and now affirm.
Cascade alleges that it is organized as a nonprofit corporation for "hospital purposes," an ownership form and use which is exempted from real property taxation by *566 N.J.S.A. 54:4-3.6; and that the properties involved here are each used for an exempt "nursing home facility that provides long-term health and nursing care[.]" Cascade avers, further, that it purchased the properties from a for-profit entity in June 1996.
The statute defines "hospital purposes" as including
health care facilities for the elderly, such as nursing homes; residential health care facilities; assisted living residences; facilities with a Class C license pursuant to P.L.1979, c. 496 (C. 55:13B-1 et al.), the "Rooming and Boarding House Act of 1979"; similar facilities that provide medical, nursing or personal care services to their residents; and that portion of the central administrative or service facility of a continuing care retirement community that is reasonably allocable as a health care facility for the elderly.

[N.J.S.A. 54:4-3.6.]
The exemption is, however, not unlimited:
[I]f any portion of a building used for hospital purposes is leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt[.]

[Ibid.]
On September 12, 1996, the Township's tax assessor, acting pursuant to Chapter 91, requested that Cascade provide income and expense information concerning the properties on an "Annual Statement of Income & Expenses that is sent to all owners or managers of income producing properties[.]" Cascade, believing the properties were exempt, did not respond to the request for information; but, instead, on September 17, 1996, filed an application with the assessor for exemption. On February 14, 1997, the tax assessor denied Cascade's application for exemption. The properties were, accordingly, assessed, and the instant tax appeals followed.
Chapter 91, in the portions pertaining to the issue in dispute, provides:
Every owner of real property of the taxing district shall ... render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, ... and if he shall fail or refuse to respond to the written request of the assessor... the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account.

[N.J.S.A. 54:4-34.]
In articulating his reasons for dismissing the complaint, Judge Rimm concluded "as a matter of law that a response by the filing of an application for exemption under N.J.S.A. 54:4-4.4 is not, under any circumstances, in ... law or in fact, a response to a Chapter 91 request. The statutes are different [and] unrelated[;] one has nothing to do with the other." The judge went on to observe that the statutory scheme does not afford a property owner an option whether or not to respond to a Chapter 91 request on the basis of the owner's determination that the property is exempt. Judge Rimm stated that, at the time the assessor requested the information from plaintiff, he had tentatively concluded, based on information at hand, that the property was not exempt and he was attempting to make the correct assessment. Judge Rimm opined that this was an evaluation for the tax assessor to make, subject to judicial review, and that the property owner had no authority to substitute its judgment on the issue for that of the assessor; i.e., the property owner was *567 obliged to comply with the request and litigate its entitlement to an exemption in the only judicial proceeding provided by law, an appeal from the assessment.
If the only considerations before us were those of time and sequence, we might consider as tenable Cascade's argument that a taxpayer ought to be entitled to seek judicial review of the assessor's exemption determination even after failing to make the reports and disclosures required by Chapter 91. We note, however, that Chapter 91 requires such data with regard to all "income-producing property," irrespective of whether it is entitled to exemption from taxation. See Rolling Hills of Hunterdon, L.P. v. Clinton Twp., 15 N.J.Tax 364, 369 (1995). Cascade has gone so far as to concede that a taxpayer which takes the position that it is exempt without making the disclosures required by Chapter 91, does so at its peril; and that if it loses on the review of the exemption determination it will not thereafter have the opportunity to challenge the valuation and assessment because of its failure to comply with Chapter 91 requirements. But see Ocean Pines, supra, 112 N.J. at 10-12, 547 A.2d 691 (recognizing limited right to a hearing on the reasonableness of the assessment). This position begs the question, however; it is apparently based on the faulty assumption that the owners of exempt properties are not required to make Chapter 91 disclosures.
The view espoused by Cascade seems attractive at first blush because it suggests there is a potential for minimizing the costs to the taxpayer from preparing the disclosures, and appears to promote arguably legitimate privacy/confidentiality interests. On the other side of the ledger, however, we observe, as Judge Rimm did, that there are reasons independent of any direct assessment need why the data is required. One of these is the assessor's responsibility under N.J.S.A. 54:4-27:
The assessor shall enter in a separate list a description of all cemeteries, churches, public buildings and other real property exempt from taxation, and all exempt personal property, with the name of the owner, and shall value such land and buildings and personal property at the amount which would be the taxable value if the same were not exempt from taxation in the same manner as other real and personal property, and in each case he shall state the ground of exemption.
By the plain language of this statute, an assessor is obliged to make a valuation of exempt property, irrespective of any assessment, and record the same. Where the property produces no income, the task is simplified. But where the property is income-producing, the assessor, in discharging this duty, must obviously have access to essential information, i.e., the data required to be disclosed under Chapter 91 with respect to all income-producing properties. Thus, because an owner of income-producing property that is exempt must make the disclosure in any event, a rationale focusing on benefits to be gained from expense avoidance or non-divulgence of confidential information is illusory.
Also, the exemption claim is only part of the case. If the tax assessor denies the exemption, he or she must be prepared to go on to make an appropriate assessment in a timely fashion, subject, of course, to judicial review. The submission of Chapter 91 data permits the assessor to discharge his or her overall responsibilities based upon current information regarding income-producing property. If the data can be withheld pending separate evaluation of the exemption claim, assessors may well be impeded in discharging their essential functions as required by law. Certainly, they will be delayed, at least to some extent, as they become involved in two proceedings rather than one.
Furthermore, since nonprofit status is a prerequisite to a health care facility's exemption, financial data assists the tax assessor in determining, in any particular instance, whether not-for-profit corporate *568 status is merely a form which is not borne out by fiscal reality.
Finally, Chapter 91 disclosure is essential where a portion of the property at issue is being leased to a profit-making entity and is therefore, to some extent, not tax exempt. See N.J.S.A. 54:4-3.6. The record before us suggests that this may be the case here.
We note the Township's concession at oral argument that the exemption questions concerning the parcels at issue could have been resolved independently, possibly by settlement. Nevertheless, because of the assessor's need for the data sought for the purposes of discharging all of his responsibilities, including those under N.J.S.A. 54:4-27 and relating to the provisions of N.J.S.A. 54:4-3.6, it was incumbent upon the Township to press the issue concerning the need for disclosure.
Cascade emphasizes that, on September 17, 1996, it complied with its obligation under N.J.S.A. 54:4-4.4 to file a claim for exemption by October 1; and argues that that was its only obligation under applicable laws in respect of the exemption issue. But this argument makes no reference to a pertinent provision of the very same statute:
Each assessor may at any time inquire into the right of a claimant to the continuance of an exemption hereunder and for that purpose he may require the filing of a further statement or the submission of such proof as he shall deem necessary to determine the right of the claimant to continuance of the exemption.

[N.J.S.A. 54:4-4.4.]
This clause provides further support for a basic premise underlying the Township's position, that the Legislature has reposed considerable administrative authority in assessors to determinefairly and reasonably within the deadlines and other parameters established in statute and subject to judicial reviewwhether, how, and to what extent particular property should be assessed. Once again, Cascade's argument seems based on the faulty premise that its tax-exempt status excuses it from other, unconnected obligations imposed by law.
The provision in Chapter 91 which bars an appeal from a valuation and assessment "with respect to income-producing property" where the mandated disclosure has not been made, cannot be seen as bespeaking any special status for Cascade or any similarly situated property owner because, in the final analysis, its property is determined to be exempt. Simply enough, assessors, in order to do their jobs in every particular, must be seen to possess the authority to require the production of the data sought here. The Legislature has recognized this, imposing, as the cost of non-compliance, waiver of the right to appeal a valuation and assessment arrived at by the assessor in an exercise of his or her best judgment in the absence of the information required, which is, after all, in the possession and control of the property owner. We note that the assessor's request for information in this case was more comprehensive and clear than was the request in ML Plainsboro L.P. v. Township of Plainsboro, 16 N.J.Tax 250 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 194 (1997).
Thus, the language of Chapter 91 requiring disclosures in respect of all "income-producing property" must logically be interpreted literally to include even tax-exempt property that produces income (as distinguished from profit). Correlatively, the barring language of Chapter 91 must be seen as jurisdictional (except for the right to a reasonableness hearing) where the scope of the assessor's request is plain, see ibid., because of the clarity of the provision prohibiting an appeal from the valuation and assessment where timely disclosures have not been made, and the need for the assessor to meet established deadlines. See Alfred Conhagen, Inc. v. South Plainfield Borough, 16 N.J.Tax 470, 473 (App.Div. 1997); Summerton Shopping *569 Plaza v. Manalapan Twp., 15 N.J. Tax 173, 176 (App.Div.1995).
Affirmed.
NOTES
[*] The statute is commonly referred to as "Chapter 91" because it was last amended in L. 1979, c. 91, § 1, effective May 16, 1979.