NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0743-16T1

ALCATEL-LUCENT USA INC.,

      Plaintiff-Appellant,

v.

TOWNSHIP OF BERKELEY
HEIGHTS,

      Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **July 18, 2019** |
| **APPELLATE DIVISION** |

Submitted March 6, 2019 – Decided July 18, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from the Tax Court of New Jersey, Docket No. 6661-2015.

Riker Danzig Scherer Hyland & Perretti LLP, attorneys for appellant (Stuart M. Lederman, of counsel and on the brief; Rudy Randazzo, on the brief).

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for respondent (Sandra Belli, on the brief).

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Plaintiff Alcatel-Lucent USA Inc. (Alcatel),[1] is the owner of real property in the Township of Berkeley Heights on which is located its North American headquarters. The Tax Court found there are approximately 1.5 million square feet of improvements on the 153.4 acre Berkeley Heights property – of which Alcatel contends 53 acres are woodlands – designated on the Township's tax map as block 3701, lot 1.[2] Alcatel appeals from that portion of the Tax Court's order, later confirmed as a final judgment, dismissing its complaint that challenged the Township's 2015 denial of a farmland assessment for the woodlands portion of the property because Alcatel failed to respond to a request sent by the Township's tax assessor pursuant to

---

[1] The property was conveyed by Lucent Technologies, Inc. (Lucent) to LTI NJ Finance LLC (LTI), which simultaneously entered into a twenty-year agreement with Lucent, the sole member of LTI, pursuant to which Lucent was considered the "beneficial owner." Lucent merged with Alcatel, a French company, in 2006, to form Alcatel-Lucent USA Inc. The agreement between LTI and Lucent was terminated in 2013 and LTI was merged into Alcatel. We are informed by Alcatel's merits brief that it is now known as "Nokia."

[2] Alcatel contends in its merits brief there are approximately 1.2 million square feet of improvements on 151 acres. A 2010 Forest Management Plan prepared for LTI indicates the total property – including that extending into the neighboring Borough of New Providence – "encompasses 195.63 acres, of which 57.27 acres are woodland. The balance of the property consists of 138.36 acres associated with the [Alcatel] corporate campus." The discrepancy between those measurements and those found by the Tax Court judge have no bearing on our decision.

A-0743-16T1

N.J.S.A. 54:4-34.  Following our de novo review, we affirm substantially for the reasons set forth in Judge Joshua D. Novin's cogent written opinion.

N.J.S.A. 54:4-34[3] requires, in part, every real property owner, "on written request of the assessor . . . [to] render a full and true account of his name and real property and the income therefrom, in the case of income-producing property."  The Township's tax assessor forwarded by certified mail, return receipt requested, a Chapter 91 request for income and expense data to:

> Block: 3701   Lot: 1   4A
> Property Location:  600 MOUNTAIN AVENUE
>           BERKELEY HEIGHTS, NJ
> ALCATEL-LUCENT USA/ATN.CORP.COUNSEL
> 600 MOUNTAIN AVE-REAL EST
> MURRAY HILL, NJ   07974

It is undisputed that Alcatel received and did not respond to the Chapter 91 request.  Fifty-four days after the Township sent the Chapter 91 request, LTI submitted an application for farmland assessment, a woodland data form and a Forest Management Plan to the assessor seeking an assessment for the 2015 tax year pursuant to the Farmland Assessment Act of 1964 (the Act), N.J.S.A. 54:4-23.1 to -23.23, for the woodland portion of the property.  The assessor denied the application asserting the "[a]gricultural use is not [dominant] use."

---

[3]  The statute is commonly referred to as "Chapter 91" because the Legislature last amended it with L.1979, c. 91, § 1.  Cascade Corp. v. Twp. of Middle, 323 N.J. Super. 184, 185, n.* (App. Div. 1999).

A-0743-16T1

Judge Novin dismissed Alcatel's complaint challenging the denial pursuant to that portion of Chapter 91 that provides that if the property owner fails or refuses

> to respond to the written request of the assessor within 45 days of such request . . . the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request.
>
> [N.J.S.A. 54:4-34.]

Alcatel contends the Tax Court erred in: extending the application of the Chapter 91 preclusion penalty to its farmland assessment appeal; applying the Chapter 91 preclusion penalty to the woodland property because it is not income producing; and formulating a new rule that misinterprets our prior holding and undermines the legislative purpose of Chapter 91 and the Act. It also argues that technical deficiencies in the Township's Chapter 91 request bar preclusion of its claim.[4]

---

[4] Alcatel does not contest the dismissal – also based on its failure to respond to the Chapter 91 request – of its complaint challenging the 2015 tax assessment of the entire property. See H.J. Bailey Co. v. Neptune Twp., 399 N.J. Super. 381, 382-83, 386 (App. Div. 2008) (holding, although owners of both income-producing and non-income-producing properties must respond to

A-0743-16T1

Although our review of a Tax Court decision is deferential, Estate of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011), because "judges presiding in the Tax Court have special expertise," Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990), we review a Tax Court's legal determinations de novo, United Parcel Serv. Gen. Servs. Co. v. Dir., Div. of Taxation, 430 N.J. Super. 1, 8 (App. Div. 2013), aff'd, 220 N.J. 90 (2014). "Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014); see also Twp. of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 86 (2007).

Our goal in interpreting Chapter 91 and the Act, especially since they deal with "taxation or exemption therefrom," is to determine and effectuate the Legislature's intent. Pub. Serv. Elec. & Gas Co., v. Twp. of Woodbridge, 73 N.J. 474, 478 (1977). "[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature 'their generally accepted meaning, unless another or different meaning is expressly indicated.'" Ibid. (quoting N.J. Power & Light Co. v. Twp. of Denville, 80 N.J. Super. 435, 440 (App.

---

an assessor's Chapter 91 request, the appeal preclusion provisions apply only to owners of income-producing properties who fail to respond to a request).

Div. 1963)).  We seek "further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008).

Our Supreme Court noted the "clear and unambiguous" language of N.J.S.A. 54:4-34 precludes a taxpayer who fails to make any response to a Chapter 91 request from pursuing an appeal.[5]  Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 7, 9 (1988); see also Lucent Technologies, Inc. v. Twp. of Berkeley Heights, 201 N.J. 237, 248 (2010).  We recognized in SKG Realty Corp., v. Township of Wall, 8 N.J. Tax 209, 211 (App. Div. 1985), the purpose of Chapter 91's mandatory response provision "is to afford the assessor access to fiscal information that can aid in valuing the property.  The purpose of the provision outlawing appeals by non-responding owners is to encourage compliance with the accounting requirement."  As we noted in H.J. Bailey, 399 N.J. Super. at 387, the Court in Ocean Pines recognized the need for such compliance was necessitated by "the difficulties faced by tax assessors when property owners fail or refuse to respond to reasonable requests for information,"

---

[5]  Even if the taxpayer is precluded from appealing, the assessor's valuation is still subject to the court's review of the data considered and the methodology used by the assessor at a reasonableness hearing.  Ocean Pines, 112 N.J. at 11. Final judgment was entered in this matter after Alcatel waived its right to that hearing.

the very problem that [Chapter 91] was designed to remedy. It is the local tax assessor, and not the county board or Tax Court, that is charged with the responsibility of valuing and assessing real property. If the economic data are to be of any use in the valuation process, they must be submitted in timely fashion to the assessor, and not to a tribunal on a subsequent appeal.

[Ocean Pines, 112 N.J. at 7-8 (citation omitted).]

We reject Alcatel's argument that the Act provides the sole framework for assessing farmland properties, and that Chapter 91 has no applicability. That parochial view ignores a more global view of tax assessments that was recognized by the Court in McMahon v. City of Newark, 195 N.J. 526, 541 (2008):

Taxation of real property in New Jersey is of constitutional dimension. In addition to requiring that "[p]roperty shall be assessed for taxation under general laws and by uniform rules[,]" N.J. Const. art. VIII, § 1, ¶ 1(a), New Jersey's Constitution requires that "[a]ll real property assessed and taxed . . . shall be assessed according to the same standard of value, [and] shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district." Ibid.

A comprehensive statutory scheme seeks to implement that constitutional mandate. Thus, the Legislature has required that all real property taxes in New Jersey be assessed annually at the local or municipal level. See N.J.S.A. 40A:9-146 (requiring that municipal governing body or chief executive "shall provide for the appointment of a tax assessor and such deputy tax assessors as it may determine

7

necessary"); N.J.S.A. 54:4-23 (providing that "[a]ll real property shall be assessed to the person owning the same on October 1 in each year").

[(alterations in original).]

Pursuant to that statutory scheme, a tax assessor is mandated to "make a list in tabular form of the names of the owners . . . of each parcel . . . and the taxable value of each parcel as determined by him." N.J.S.A. 54:4-24; see also Young v. Bergen Cty. Bd. of Taxation, 5 N.J. Tax 102, 106 (Tax 1982). Assessors are obliged to keep the tax rolls current by assessing each property at its full and fair value each year. Regent Care Ctr., Inc. v. Hackensack City, 362 N.J. Super. 403, 415 (App. Div. 2003). Even tax exempt properties must be valued as if they were not exempt. N.J.S.A. 54:4-27; Cascade, 323 N.J. Super. at 188. "Once a tax assessor completes the assessments for the municipality, the assessment roll is submitted to the county board of taxation and, based in part on the assessments provided by all assessors in that county, the county board sets the tax rate for the municipality." McMahon, 195 N.J. at 542 (citations omitted).

The Act is part of the warp and weft woven into a comprehensive tax scheme created by the Legislature which we determine must be viewed, not separately, but in pari materia with Chapter 91. We thus heed the Court's prescription that

A-0743-16T1

> [s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole. When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will. Statutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole.
>
> [In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (citations omitted).]

The Act implemented a 1963 amendment to our Constitution[6] that responded to the Court's ruling in Switz v. Kingsley, 37 N.J. 566 (1962), which declared unconstitutional a statute that prohibited the inclusion of "prospective value for subdivisions or nonagricultural use" in the assessment of land devoted to agricultural use, L. 1960, c. 51, § 23. The Act mandates that land devoted to agricultural or horticultural uses, that otherwise meets statutory requirements, be valued for those uses. N.J.S.A. 54:4-23.2.

"The primary purpose of the Act . . . was to preserve the 'family farm' by providing farmers with some measure of economic relief by permitting farmland to be taxed on its value as a continuing farm and not on any other basis." Hovbilt, Inc. v. Twp. of Howell, 138 N.J. 598, 619 (1994) (quoting Urban Farms, Inc. v. Twp. of Wayne, 159 N.J. Super. 61, 67 (App. Div.

---

[6] N.J. Const. art. VIII, § 1, ¶ 1(b).

1978)).  Incidental benefits that were significant factors in the passage of the Constitutional amendment were "maintenance of open spaces and the preservation of the beauty of the countryside."  Ibid.

As Judge Novin recognized, the assessment of farmland pursuant to the Act is analogous to a tax exemption.  Soc'y of the Holy Child Jesus v. City of Summit, 418 N.J. Super. 365, 378 (App. Div. 2011); see Cheyenne Corp. v. Twp. of Byram, 248 N.J. Super. 588, 592 (App. Div. 1991).  The Act's favorable tax rates "favor[] certain taxpayers at the expense of the remaining taxpayers in the taxing district," Dep't of Envtl. Prot. v. Franklin Twp., 3 N.J. Tax 105, 119 (Tax 1981), aff'd o.b., 5 N.J. Tax 476 (App. Div. 1983), diverging from the tenet that "[a]ll real property within New Jersey is subject to taxation unless expressly exempted by the Legislature," N.J. Highway Auth., 190 N.J. at 87 (citation omitted).  Contrary to Alcatel's argument that tax laws are to be construed against the State, the preferential treatment accorded owners of assessed farmland, although derived from a Constitutional amendment, requires strict construction against the party claiming the tax benefit.  See Pruent-Stevens v. Toms River Twp., 458 N.J. Super. 501, 514 (App. Div. 2019) (holding doubts regarding a statutory veteran's property tax exemption, stemming from Article VIII, Section 1, Paragraph 3 of the New Jersey Constitution, are resolved against the party seeking the exemption).

Considering these statutes together, we conclude Judge Novin did not err in applying our holding in Cascade when he dismissed Alcatel's complaint. If the judge created a new rule of law as Alcatel contends, it is a good one, especially apropos where a portion of the property is not subject to preferential tax treatment.

Judge Novin recognized that, in Cascade, we held the owners of income-producing properties must respond to a Chapter 91 inquiry even if the owner claims the property is exempt. 323 N.J. Super. at 189. We reasoned,

> [i]f the tax assessor denies the exemption, he or she must be prepared to go on to make an appropriate assessment in a timely fashion, subject, of course, to judicial review. The submission of Chapter 91 data permits the assessor to discharge his or her overall responsibilities based upon current information regarding income-producing property. If the data can be withheld pending separate evaluation of the exemption claim, assessors may well be impeded in discharging their essential functions as required by law. Certainly, they will be delayed, at least to some extent, as they become involved in two proceedings rather than one.
>
> [Ibid.]

The assessor's need for data "is essential" where the property may be partially free from full assessment in order to determine what portion is fully taxable. Ibid. Split-use property may or may not qualify for special treatment

11

such as a farmland assessment. Twp. of Wantage v. Rivlin Corp., 23 N.J. Tax 441, 448 (Tax 2007).

> [I]f the separated or split off portion of the lot is appurtenant to agricultural activities on the balance of a tax lot, reasonably required for the maintenance of those activities, and used for the benefit of the agricultural activities, then the separated or split off portion of the tax lot will qualify for farmland assessment as will the remainder of the lot. If, however, a portion of a tax lot is used for "independent commercial operations not conducted for the benefit of the farm or the farmer but as a completely separate business activity," then that portion of the tax lot cannot qualify for farmland assessment even if the non-farming use is not the predominant use of the entire lot.
>
> [Ibid. (citation omitted) (quoting Wiesenfeld v. Twp. of S. Brunswick, 166 N.J. Super. 90, 95 (App. Div. 1979)).]

Depending on the assessor's determination regarding the applicability of an exemption, he would, if provided with the Chapter 91 information, be able to assess the property for tax purposes without delay. Cascade, 323 N.J. Super. at 188-89. The property owner's response to the Chapter 91 request would "assist the assessor in the first instance, to make the assessment and thereby . . . avoid unnecessary expense, time and effort in litigation." Ocean Pines, 112 N.J. at 7 (quoting Terrace View Gardens v. Twp. of Dover, 5 N.J. Tax 469, 471-72 (Tax 1982), aff'd o.b., 5 N.J. Tax 475 (App. Div. 1983)).

Inasmuch as the Chapter 91 data is essential to the valuation of a split-use property, and, in turn, to the fulfillment of the assessor's statutory duties for the entire municipality, we agree with Judge Novin that the statute's preclusion provision should be applied to owners who fail to respond to the assessor's request. As the judge astutely noted, the Legislature, which enacted Chapter 91 with full knowledge of its farmland legislation, "did not carve out exceptions for any property owner group or property class." See Twp. of Mahwah v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 279 (1985) (holding the Legislature "is presumed to have been aware of existing legislation" when it adopts a statute). Judge Novin also concluded,

> to render a request for information under Chapter 91 inapplicable or irrelevant before a property tax assessment has been fixed, or before a property has qualified for preferential farmland assessment, or before a property has been determined wholly or partially exempt from taxation, would be counterproductive to the very goals Chapter 91 sought to achieve.

The judge's logic comports with our holding in Cascade, 323 N.J. Super at 190:

> Simply enough, assessors, in order to do their jobs in every particular, must be seen to possess the authority to require the production of the data sought here. The Legislature has recognized this, imposing, as the cost of non-compliance, waiver of the right to appeal a valuation and assessment arrived at by the assessor in an exercise of his or her best judgment in the absence

13

> of the information required, which is, after all, in the possession and control of the property owner.

"In any event, the taxpayer cannot just sit by and do nothing until the assessment is finalized, as this taxpayer did, and thereafter seek to appeal the assessment by plenary review. Such conduct results in 'unnecessary expense, time and effort in litigation.'" Tower Ctr. Assocs. v. Twp. of E. Brunswick, 286 N.J. Super. 433, 438-39 (App. Div. 1996) (quoting Terrace View Gardens, 5 N.J. Tax at 471-72). As we said in H.J. Bailey, 399 N.J. Super. at 389, property owners who fail to respond to Chapter 91 requests run "the risk that the property will ultimately be found to be income-producing. In such a case, the taxpayer's appeal would properly be limited under Ocean Pines." (footnote omitted).

Preclusion of claims does not hinder any of the Act's objectives. Those property owners who comply with Chapter 91's mandate will, if the property qualifies, enjoy the benefits of a reduced assessment. Application of the preclusion provision, however, fosters compliance with Chapter 91 so as to ensure properties are expeditiously and fairly assessed for all taxpayers.

We are unpersuaded by Alcatel's argument that preclusion was improper because the property was not income-producing as it was "not rented or leased." Once more, Alcatel attempts to segregate the woodland property from the entire tract which is delineated on one tax map lot. As we have already

14

determined, Alcatel was required to respond to the Chapter 91 request for the entire lot in order for the assessor to properly value same.

Alcatel argued to the Tax Court that because it did not market the property for rent or seek outside occupants or tenants, any leases "were not entered into to generate income" and were de minimus in nature serving only as business accommodations to service providers. Judge Novin, however, concluded that Alcatel received rent for leased space and the property was thus income-producing. The judge's findings were based on: a letter sent by Alcatel's managing corporate counsel in response to a 2013 Chapter 91 request[7] in which counsel admitted Alcatel received rent from a company that occupied over 17,000 square feet of a building located on the property; other documents submitted by counsel to the Township with his letter that identified other subtenants of the building; and Alcatel's brief to the Tax Court that acknowledged, as Judge Novin found, "the 'only "income" received [by Alcatel] is from certain license and <u>lease agreement</u>[s] for less than [one percent] of the [p]roperty and for which [Alcatel] received inconsequential

---

[7] Judge Novin considered the Township's motions to dismiss Alcatel's 2014 and 2015 tax complaints and 2014 and 2015 farmland assessment complaints; he thus considered evidence relating to the year prior to the case under review.

license fees and <u>rent</u>.'" (second alteration in original). We agree with the judge's supported conclusion that the property was income-producing.

Alcatel contends the woodland property was not income-producing. As stated, if that assertion was accurate, Alcatel would still be obligated to respond to the Chapter 91 request prior to a determination of its farmland assessment application in order to ensure that the assessor could readily value the property no matter the outcome of the application.[8]

Further, Alcatel's claim that the woodlands property is not income producing is belied by the documents that accompanied its application. The Forest Management Plan indicates, "[m]anagement will work to improve the quality, health and vigor of the forest, and will additionally aid in the generation of periodic income from the harvest and sale of wood products"; the generation of income was also listed as one of the objectives of the plan. The plan also delineated the yield in terms of board feet and cords for all but two of the ten stands of trees located in the woodland. Part of the proposed plan called for the select harvest of trees for timber, the timing of which "will be [dependent] on the owners' objectives and markets for timber products" and

---

[8] Whether the woodland portion of the property meets the statutory criteria for a farmland assessment, N.J.S.A. 54:4-23.2 to -23.6, or is disqualified because agriculture is not the predominant use, <u>see</u> <u>City of E. Orange v. Twp. of Livingston</u>, 102 N.J. Super. 512, 535-37 (Law Div. 1968), <u>aff'd</u>, 54 N.J. 96 (1969), is not before us. We, therefore, do not address that issue.

A-0743-16T1

firewood; and that "[w]ood should continue to be sold as firewood or other wood products, such as mulch and chipwood." The plan concluded that "[t]he productivity of this woodland can meet the fiscal requirement of the Farm Tax law," a seeming reference to the requirement that the property generate a minimum amount of "yearly gross sales, payments, fees, and imputed income" in order to qualify for a farmland assessment, N.J.S.A. 54:4-23.5(a). Moreover, the woodland data form sets forth a dollar amount under the "[i]ncome received" section for the commercial harvest of forest products.

We determine Alcatel's argument – the application of Chapter 91's preclusion provision is inequitable because the Township failed to: "properly identify the property for which it was seeking a response"; "identify the specific information it required"; and "identify the time frame for which the information was necessary" – is without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only that Alcatel received the same request the year prior, to which its counsel responded, albeit by letter. And this is not the case where an unsophisticated property owner may have been confused by an ambiguous request. See ML Plainsboro Ltd. P'ship v. Twp. of Plainsboro, 16 N.J. Tax 250, 257 (App. Div. 1997). Further, the Township's submissions to Alcatel – the request letter for "income and expense data," copy of N.J.S.A. 54:4-34, "Annual Statement of Business Income and

Expenses Commercial Properties" form, "Instructions for Completion of Schedule A" form, and a rental schedule form titled "Schedule A" – provided sufficient information to compel Alcatel to respond in whole or part or at least pose any questions or complaints about deficiencies; it could not, as it did, "just sit by and do nothing." Tower Ctr., 286 N.J. Super. at 438.

We perceive no reason why Chapter 91's preclusion should not apply to Alcatel's farmland assessment complaint and affirm Judge Novin's dismissal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION