BIANCO, J.T.C.
This opinion shall serve as the court’s determination following a “reasonableness hearing” as contemplated by Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 547 A.2d 691 (1988), after the conditional dismissal of the Complaint of plaintiff, 510 Ryerson Road, Inc. (“Ryerson”), for Ryerson’s failure to respond to the request of the Municipal Assessor (“Assessor”) for defendant, Borough of Lincoln Park (“Borough”), seeking information pursuant to N.J.S.A. 54:4-34, commonly referred to as Chapter 91.[1] For the reasons set forth herein, the court finds that the assessment in this case is reasonable, and the case is therefore dismissed.

*187
Background.

Prior to the reasonableness hearing, the parties conducted a thorough motions practice, a recap of which is appropriate. Ryer-son initially filed its Complaint on February 23, 2012. Six months later, on August 21, 2012, the Borough filed a Notice of Motion to Dismiss Plaintiffs Complaint Pursuant to N.J.S.A. 54:4-34 for Ryersoris failure to respond to a Chapter 91 request for information. On September 28, 2012, after briefing and oral argument, the court conditionally granted the Borough’s Motion to Dismiss, subject to a reasonableness hearing, which was requested by Ryerson on October 1,2012.
To prepare for the reasonableness hearing, Ryerson conducted a deposition of the Assessor on January 16, 2013, where the Assessor testified that he reviewed “the Chapter 91 data compiled on the [economic rent] spreadsheet,” which contained Chapter 91 information for Class 4B Properties[2] in the Borough, in order to arrive at an assessment for Ryerson’s property located at 510 Ryerson Road, and designated as Lot 22 in Block 338 (“Subject Property”). Subsequently, on February 14, 2013, Ryerson filed a Notice of Motion to Compel Discovery seeking, among other things, “all documents the Assessor utilized to determine the 2009, 2010, 2011, and 2012 assessments of the Property.” The Borough objected on several grounds, including that Chapter 91 responses, as well as any reports derived therefrom, “are not subject to disclosure as they contain confidential and privileged information, business and proprietary information, and trade secrets of other parties.” Oral argument was held on this Motion, and on March 21, 2013, in a written order, the court required the Borough to *188 produce a copy of the spreadsheet “the Assessor admitted to utilizing ... in assessing [Ryerson’s] property.”[3] This document production was to be subject to a Confidentiality Agreement, submitted for the court’s signing by the parties as a Mutual Consent Order.
On April 10, 2013, the court received the Borough’s Notice of Motion for Reconsideration of the March 21, 2013 Order, further arguing that Chapter 91 information is confidential. Several taxpayers whose Chapter 91 information was utilized by the Assessor in assessing the Subject Property also received copies of this Notice from the Borough. The next day, the court received a letter from Phoenix Realty Partners (“Phoenix”) objecting to the disclosure of its Chapter 91 information for this case. Additionally, the court questioned whether the Borough was the proper party to object to the disclosure of the Chapter 91 information since the subject Chapter 91 documents were technically within the purview and control of the Assessor and not the Borough. The court, therefore, stayed the compliance date of the March 21, 2013 Order pending the resolution of the Motion for Reconsideration and allowed Phoenix and the Director of the Division of Taxation (the “Director”) on behalf of the Assessor, the option to file motions to participate in this matter as amici curiae; these motions were granted on July 12, 2013, and August 23, 2013, respectively.[4]
*189 Oral argument was heard on the Borough’s Motion for Reconsideration on October 25, 2013. The parties did not suggest, nor could the court find, that the language of N.J.S.A. 54:4-34 contained an explicit (or implicit) confidentiality provision. Rather, the Borough, Phoenix, and the Director argued that Chapter 91 responses contain confidential business and financial information, and if this information were released, then taxpayers would be less likely to respond to Chapter 91 requests for information.[5]
It is well established that “discovery rules are to be liberally construed,” In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82, 754 A.2d 1177 (2000), but “[t]empering the normal rule favoring wide discovery of relevant issues is a regard for [an interested party’s] interest in maintaining the confidentiality of information about its financial status,” Hermann v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 343, 627 A.2d 1081 (1993). With respect to a reasonableness hearing, however, the Supreme Court has clearly directed that “[t]he taxpayer shall be entitled to discovery of any information relied on by the assessor in arriving at the subject valuation.” Ocean Pines, supra, 112 N.J. at 12, 547 A.2d 691 (emphasis added). Accordingly, if there are limits to what can be discovered for a reasonableness hearing as far as information relied upon by an assessor in setting a disputed tax assessment, then it is for the Supreme Court, not this court, to impose those limits. It is this court’s view, however, that whether Chapter 91 information may be confidential should not prohibit its disclosure for the purpose of a reasonableness hearing; an interested party already has the option to move for a protective order under Rule 4:10-3 (or mutually agree as was the case here), to limit the use of that information to the relevant court proceeding.
Based on the parties’ legal arguments, the court granted the Borough’s Motion for Reconsideration but, for the aforementioned *190 reasons, affirmed the March 21, 2013 Order. After several weeks of discussion between the parties regarding the language of the Confidentiality Agreement, the court entered a Protective Order on December 4, 2013.[6]

Reasonableness Hearing 
[7]

A reasonableness hearing was held on March 17, 2014. Based on the testimony of the Assessor and the evidence submitted by the parties, the court makes the following findings of fact. In 2011, the Borough was ordered to conduct a reassessment of all property for tax year 2012, based on the market conditions as of October 1, 2011. Certified Valuations, Inc. (“Certified Valuations”), a revaluation and appraisal firm, was hired to perform the reassessment. As one method for collecting data to assist in this task, Certified Valuations, through the Assessor, requested income and expense information from income-producing properties pursuant to Chapter 91. Certified Valuations compiled this information into an “Economic Rent Report,” a portion of which pertaining to Class 4B Properties was admitted into evidence under seal.[8] Additionally, Certified Valuations produced an “Income Approach Chart,” which listed several categories of properties and the base price per square foot (or “base rent”) relative to the condition of the property. For example, small offices (designated 3.4.N) were valued from $8 per square foot for the lowest quality (1) up to $16 per square foot for the highest quality (5). Likewise, warehouses (designated 3.11.N) were valued from $4 per square foot up to $8 *191 per square foot. At the conclusion of the reassessment, Certified Valuations made recommendations regarding the value of properties in the Borough.
The Subject Property, a Class 4B Property, contained a warehouse, which was originally built in 1960. The highest ceiling height in the warehouse was eighteen feet with other portions at twelve feet, both of which are less than the desirable height for a modern warehouse. See 90 Riverdale, L.L.C. v. Borough of Riverdale, 27 N.J.Tax 328, 333 n. 6 (Tax 2013) (discussing ceiling heights in warehouses). The warehouse also contained some space for small offices. Given the age and characteristics of the building, Certified Valuations made the following recommendations for the Subject Property:
[[Image here]]
Using a five-percent vacancy rate, a ten-percent adjustment for expenses, and an overall rate of return of eight-percent, the recommended value of the Subject Property utilizing the Income Approach was approximately $7,500,000.
The Assessor, who has held this position for nearly thirty years, reviewed and analyzed Certified Valuation’s recommendations. As relevant to the Subject Property, to determine if the recommendations were reasonable, the Assessor looked at information for all Class 4 properties (including 4B properties), including the economic rent rolls, the type of property, the size of the property, what the property was used for, the economic rent assigned to the property, the expense given, the vacancy given, and the informa *192 tion received from Chapter 91 requests.[9] Ultimately, the Assessor adopted the recommendations of Certified Valuations and assessed the Subject Property at $7,500,000.[10]

Law

“All real property shall be assessed to the person owning the same on October 1 in each year.” N.J.S.A. 54:4-23. Chapter 91 requires owners of income-producing property to respond to requests for information by their respective tax assessors, which helps the assessors to “reasonably determine ... the full and fair value [of the property].” N.J.S.A. 54:4-34.[11] “On appeal a municipality’s original tax assessment is entitled to a presumption of validity.” The Pantasote Co. v. City of Passaic, 100 N.J. 408, 412, 495 A.2d 1308 (1985).[12] When a taxpayer fails to timely *193 respond to a Chapter 91 request, “any such appeal is sharply limited in both its substantive and procedural aspects.” Ocean Pines, supra, 112 N.J. at 11, 547 A.2d 691; see also N.J.S.A. 54-4-34. In particular, “such an appeal is limited in its scope to the reasonableness of the valuation based upon the data available to the assessor.” Ocean Pines, supra, at 112 N.J. at 11, 547 A.2d 691 (internal quotation marks omitted). “Encompassed within this inquiry are (1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation.” Ibid. Both the underlying data and the methodology used by the assessor are entitled to presumptions of correctness. See Lucent Technologies, Inc. v. Berkeley Heights, 24 N.J.Tax 297, 308 (Tax 2008). “The taxpayer, therefore, has the burden to produce evidence that is ‘definite, positive and certain in quality and quantity in order to overcome [these presumptions].” Ibid. (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)).
There are several instances when the methodology underlying an assessment has been questioned. In Pantasote, supra, for the 1978 tax year, the true value of the property at issue was established via settlement. 100 N.J. at 411-12, 495 A.2d 1308. For 1979, 1980, and 1981, rather than calculate the true value of the property for each year, the tax assessor simply added value to the 1978 figure, including “a ten-percent time adjustment to reflect the general increase in industrial values, basing this on sales in the area.” Id. at 411-12, 495 A.2d 1308. Although the Court found that “the assessment methodology used by the municipal tax assessor was incorrect,” the taxpayer failed to overcome the presumption of validity. Id. at 414, 495 A.2d 1308.
While the assessment methodology of the tax assessor was incorrect, it was not arbitrary or capricious. Moreover, the amount of the assessment was reasonably related to property values that could have otherwise been reached by an applica *194 tion of sound assessment approaches, and, further, the assessment appears to be a reasonable approximation of trae value.
[Id. at 417, 495 A.2d 1308.]
In Transcontinental Gas Pipe Line Corp. v. Bernards Township, 111 N.J. 507, 545 A.2d 746 (1988), prior to 1988, the tax year at issue, the underlying property was valued according to a court order. Id. at 514, 545 A.2d 746. In 1983, all of the township’s property was reassessed, and a different valuation method was used for the property at issue although its tax figures were similar pre- and post-reassessment. Id. at 514-15, 545 A.2d 746. The tax assessor acknowledged this similarity and admitted that “his primary consideration was to establish a value that would yield substantially the same tax dollars at the Township’s new tax rate as had been yielded in the previous year under the old tax rate.” Id. at 515, 545 A.2d 746. The Court found that “the methodology utilized in the original assessment manifested an arbitrary or capricious discharge of the assessor’s responsibilities” and “provide[d] no reliable indication that the quantum of the assessment [was] itself reasonable.” Id. at 538, 545 A.2d 746.
Lucent Technologies v. Berkeley Heights dealt with very similar concerns as the present case. In Lucent, over the course of several years, three different tax assessors were employed by the municipality. 24 N.J.Tax at 300-02. To determine the true value of the property at issue for a particular tax year, later assessors relied on information gathered by previous assessors without verifying or updating the data; they also relied on the recommendations of the municipal appraiser. Id. at 300-02. The later assessors did not inspect the property or otherwise attempt to make an independent effort to value the property. Id. at 301-02. Furthermore, several years had passed since the last municipal revaluation. Id. at 300. The taxpayer, whose appeal was limited to a reasonableness hearing after failing to respond to a Chapter 91 request, argued that this methodology was unreasonable. The court, quoting the Supreme Court in Tri-Terminal Corp. v. Borough of Edgewater, acknowledged the following:
The law calls for separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, there should nevertheless be alertness *195 to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function.
[Lucent, supra, 24 N.J.Tax at 312 (quoting Tri-Terminal, supra, 68 N.J. 405, 413-14, 346 A.2d 396 (1975)).]
The court ultimately concluded that “the methodology employed by the assessors ... represented a reasonable assessing practice,” because they “displayed ‘alertness’ to valuation factors affecting the property.” Id. at 313. It was reasonable for an assessor to value the property based on a review of the file, discussions with the municipal appraisal expert, information from the earlier revaluation, a prior appraisal, work product from past assessors, and a personal knowledge of property values in the municipality. Ibid.

Analysis

In this case, Ryerson failed to respond to the Chapter 91 request and is therefore limited to a reasonableness hearing. Accordingly, Ryerson must prove either that the data underlying the assessment were unreasonable or that the methodology utilized by the Assessor was unreasonable. With respect to the underlying data, Ryerson focused on the information contained in the Economic Rent Report and the fact that the Assessor did not independently verify the information. However, Ryerson did not produce any evidence or elicit any testimony to suggest that the data were incorrect or unreliable, nor can the court find that the data were objectively unreasonable. On this point, Ryerson has not overcome the presumption of validity.
With respect to the methodology utilized by the Assessor, Ryerson concentrated on the fact that the Assessor did not personally inspect the property for the tax year at issue and the fact that the Assessor adopted the recommendations of Certified Valuations. Here, as in Lucent, the Assessor himself could not practically reassess every property in the Borough for every tax year. The municipal-wide reassessment for 2012 demonstrated a general “alertness” to changes in property values in the Borough. The Assessor was not aware of any specific changes at the Subject *196 Property that would require an adjustment in value or that were otherwise missed during the reassessment, and Ryerson did not suggest there were any. Certified Valuations, acting on behalf of the Borough and its Assessor, gathered information for the reassessment and made recommendations of value based on the Income Approach, an accepted valuation method. Upon receipt of these recommendations, similar to Lucent, the Assessor reviewed and analyzed information for all Class 4B properties to determine if the recommendations were reasonable before adopting them as his own. This court cannot conclude that this methodology was unreasonable, arbitrary, or capricious. Again, the taxpayer has not overcome the presumption of validity.

Conclusion

“While practicalities obviously preclude most assessors reviewing every assessment line item every year,” Tri-Terminal, supra, 68 N.J. at 413, 346 A.2d 396, in this year, all of the properties in the Borough were reviewed. That the Borough relied on the assistance of Certified Valuations is not a detriment to the process but a benefit. The purpose of reassessment is to ensure that property owners pay their proportional amount of taxes. Hiring an experienced valuation firm to collect data on properties and make recommendations of value to an Assessor who subsequently independently reviews and scrutinizes this information before making an assessment is eminently reasonable. Because Ryerson has failed to overcome its burden in this case that the Assessor acted unreasonably, the case is dismissed.
The Tax Court Clerk/Administrator is directed to issue judgment consistent with this opinion.

 Generally, pursuant to a Chapter 91 request, a taxpayer owning income-producing property must appropriately respond to such request or else forfeit its right to a tax appeal.

 The Subject Property is classified as a Class 4B property. See N.J.A.C. 18:12-2.2(f):
Class 4B: “Industrial properties" means land or land and improvements adaptable for industrial use; ideally, a combination of land, improvements, and machinery which has been integrated into a functioning unit intended for the assembling, processing, and manufacturing of finished or partially finished products from raw materials or fabricated parts, such as factories; or a similar combination intended for rendering service, such as laundries, dry cleaners or storage warehouses.

 The March 21, 2013 Order initially required the Borough to produce "[a] copy of the spreadsheet for economic rent prepared by Certified Valuations Inc." and "[a] copy of the spreadsheet created by Certified Valuations Inc. comprising ail the Chapter 91 properties.” It was explained to the court in a March 26, 2013 letter from the Borough and subsequent conference call between the parties on March 27, 2013 that there was only one document at issue. The court clarified during the conference call that the Borough needed to produce whatever document or documents were utilized by the Assessor to assess the taxpayer's property. The court felt there was no need to issue a revised order.

 Phoenix initially filed a Motion to Intervene, which was denied for lack of standing and converted into a Motion for Leave to Participate as Amicus Curiae. Steven R. Irwin, Esq., appeared on behalf of Phoenix, and Thu N. Lam, DAG, appeared on behalf of the Director.

 A curious position for the Borough and the Director to take, in the court’s view, in that the failure to respond to Chapter 91 request would result in fewer tax appeals through the forfeiture of the right to appeal by the unresponsive taxpayers.

 This Order was revised on March 24, 2014 to include the testimony and the transcript of the reasonableness hearing.

 The two amici curiae did not participate in the reasonable hearing. Their admission into the case was limited to whether Chapter 91 information was confidential.

 The full title of this document as submitted to the court was mislabeled as “Woodland Park 2011 Revaluation Economic Rent Report,” which was brought to the court’s attention at the hearing. Based on the representation of the Borough’s attorney, the court is satisfied that this document contains properties in Lincoln Park. No evidence was presented to suggest otherwise.

 Based on the Chapter 91 requests, the base rent from Class 4B properties ranged from $5.23 to $13.14 with a median of $7.62. As calculated, prior to adjustments, the base rent of the Subject Property was $4.90.

 The actual value from the Income Approach was $7,515,400. Although not discussed by either party, it appears from the property record card that the Cost Approach, an accepted valuation method, was used to apportion the value between the land and the improvement, the total of which was $7,500,000.

 The full text of the statute reads as follows:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.

 There is also a presumption that "all property is uniformly assessed at 100% of true value in a revaluation year." Dresser Indus., Inc. v. Town of Harrison, 12 *193 N.J.Tax 159, 170 (Tax 1991) (referencing Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 346 A.2d 396 (1975); Cantrell v. Township of Upper Pittsgrove, 1 N.J.Tax 508 (Tax 1980); and Highview Estates v. Englewood Cliffs, 6 N.J.Tax 194 (Tax 1983)).