989 A.2d 844

LUCENT TECHNOLOGIES, INC., PLAINTIFF–APPELLANT,
v. TOWNSHIP OF BERKELEY HEIGHTS,
DEFENDANT–RESPONDENT.

Argued October 14, 2009—Decided March 17, 2010.

---

Albin and Rivera–Soto, JJ., concurred and filed opinions.

*Michael James Guerriero* argued the cause for appellant (*Day Pitney,* attorneys; *Mr. Guerriero* and *Christopher John Stracco,* on the brief).

*Saul A. Wolfe* argued the cause for respondent (*Skoloff & Wolfe,* attorneys; *Mr. Wolfe* and *David B. Wolfe,* of counsel; *Saul A. Wolfe, David B. Wolfe,* and *Edward J. Kuch, III,* on the brief).

Justice HOENS delivered the opinion of the Court.

In this interlocutory appeal, we consider whether there is a time limitation governing when a municipality may file a motion to dismiss a tax appeal that rests on the taxpayer's false or fraudulent account. In addressing that question in the first instance, the Tax Court concluded generally that there was such a limitation embodied in our Court Rule, *see R.* 8:7(e), as a result of which the municipality's dismissal motion was untimely. In an interlocutory appeal, the Appellate Division disagreed. *Lucent Techs. v. Twp. of Berkeley Heights,* 405 *N.J.Super.* 257, 963 *A.*2d 1248 (App.Div. 2009). The panel concluded that neither the governing statute, *N.J.S.A.* 54:4–34, nor *Rule* 8:7(e) limited the time within which the municipality was required to move to dismiss a tax appeal founded on a false or fraudulent account, *id.* at 264–65, 963 *A.*2d 1248, and directed the Tax Court to enter judgment dismissing the tax appeal, *id.* at 266, 963 *A.*2d 1248.

By this Court's April 21, 2009 order, we granted plaintiff's motion for leave to appeal from the Appellate Division's judgment. *Lucent Techs. v. Twp. of Berkeley Heights,* 199 *N.J.* 126, 970 *A.*2d 1044 (2009). Although we agree that the municipality's dismissal motion was not untimely, we reverse the appellate panel's judgment that the tax appeal must be dismissed in its entirety and we remand to the Tax Court for a reasonableness hearing consistent with this Court's holding in *Ocean Pines, Ltd. v. Borough of Point Pleasant,* 112 *N.J.* 1, 10–12, 547 *A.*2d 691 (1988).

I.

The circumstances that have given rise to this dispute are fully set forth in the Appellate Division's opinion. *See Lucent Techs.,*

*supra,* 405 *N.J.Super.* at 259–60, 963 *A.*2d 1248. We therefore include only a brief summary of the facts and the procedural history of this matter to aid in explaining our analysis of the issues before this Court.

On June 29, 2001, plaintiff Lucent Technologies, Inc., transferred title to the subject property in Berkeley Heights to LTI NJ Finance LLC (LTI), a limited liability company of which plaintiff was the sole member. At the same time, plaintiff entered into a leaseback agreement with LTI that included a twenty-year term. The agreement designated LTI as the landlord and plaintiff as the tenant and it specifically described the agreement as a "true lease" for purposes of "state law" and federal income taxes. In addition, the agreement fixed an annual rental fee and granted plaintiff an option to purchase the property in certain circumstances for an agreed-upon sum.[1]

In June 2003, a tax assessor for defendant, Township of Berkeley Heights, mailed a request to plaintiff for income and expense information related to the property, as authorized by statute. *See N.J.S.A.* 54:4–34. Such an inquiry from a tax assessor is commonly referred to as a Chapter 91 request. *See Great Adventure, Inc. v. Twp. of Jackson,* 10 *N.J. Tax* 230, 231 n. 1 (App.Div.1988). Plaintiff's tax manager, Steven Stockert, responded to the Chapter 91 request in writing, stating that "this property is owner occupied with the exception of certain areas the OFS (Optical Fiber Solutions) occupies.... They currently occupy 72,000 square feet."

In June 2004, defendant's tax assessor made another Chapter 91 request, by sending plaintiff a letter and a copy of the 2004 Annual Statement worksheet. The letter requested that plaintiff provide "the current income and expense data for the property identified" for the "year ending December 31, 2003." On July 8, 2004, plaintiff's tax manager again responded: "Please be advised that

---

[1] The record reflects that the documents evidencing the transfer of title were not filed in Berkeley Heights. Instead, the documents were recorded in Murray Hill, the neighboring township in which a part of the tract is located.

this property is owner occupied with the exception of less [than] 5% being occupied by OFS (Optical Fiber Solutions)."

In like fashion, in June of each of the two following years, defendant's tax assessor sent Chapter 91 requests to plaintiff, using an address in Murray Hill that Stockert had notified the Berkeley Heights tax assessor should be used. Each year, plaintiff's tax managers, Steven Stockert in 2005 and Garnette R. Smith in 2006, submitted identical responses, asserting that the property is "owner occupied" except for the space leased to OFS (Optical Fiber Solutions), which was described as being less than two percent of the building space.

On March 10, 2005, plaintiff filed a complaint in the Tax Court, appealing its 2005 assessment. In that forum, defendant served interrogatories, to which plaintiff responded on July 18, 2005. In that response, plaintiff revealed for the first time that LTI, rather than plaintiff, was the owner of the property, and described the leaseback agreement:

In June 2001, Lucent Technologies transferred the subject property and two other major corporate facilities in Whippany and Holmdel Township, New Jersey to LTI NJ Finance LLC, a wholly owned limited liability corporation [in order to] facilitate the mortgage financing of such properties. Lucent Technologies Inc. immediately leased back the subject property [and] the Whippany and Holmdel Township properties.

The answers to the interrogatories also disclosed, for the first time, that there were actually four subleases. In addition to the OFS lease that plaintiff had previously identified in its Chapter 91 responses, small portions of the property had also been leased to Sychip, Inc., Affinity Federal Credit Union and Fleet National Bank. Copies of documents relating to the leaseback transaction and subleases were attached to plaintiff's answers to the interrogatories.

Plaintiff filed its tax appeals for 2006 and for 2007 on March 23, 2006, and March 22, 2007, respectively. Defendant served interrogatories on plaintiff seeking information relating to those tax years on May 19, 2006, and June 21, 2007. Plaintiff responded to both sets of interrogatories on September 24, 2007. The respons-

es supplied information relating to the leaseback transaction and the subleases that was similar to the interrogatory answers served in 2005.

## II.

In November 2007, defendant moved to dismiss all three of plaintiff's tax appeals, arguing that because each rested on responses to the Chapter 91 requests that were false or fraudulent, the taxpayer was entitled to no relief. *See N.J.S.A.* 54:4–34. The Tax Court granted the application only for the tax years 2006 and 2007, declining to dismiss the 2005 tax appeal because of what the court characterized as the Township's delay in filing its dismissal motion. In reaching its conclusion, the Tax Court reasoned that motions for relief pursuant to the statute are governed by the 180–day timeframe established in *Rule* 8:7(e), a limitation that made the motion timely only as it related to the 2006 and 2007 tax years.[2]

The Appellate Division granted defendant's motion for leave to appeal the Tax Court's denial of its motion to dismiss the 2005 tax appeal. In reversing the order of the Tax Court, the Appellate Division looked to the language and the history of both the governing statute, *N.J.S.A.* 54:4–34, and our Court Rule, *R.* 8:7(e). Based on that review, the court reasoned that "neither the Legislature nor the Court intended to limit, through time constraints, a municipality's ability to seek dismissal of tax appeals where there has been a false or fraudulent Chapter 91 response." *Lucent Techs., supra,* 405 *N.J.Super.* at 266, 963 *A.2d* 1248. Applying that logic, the panel remanded the matter to the Tax Court, with directions that the Court enter judgment in favor of the Township, dismissing the 2005 tax appeal. *Ibid.*

---

[2] Technically, the 180–day limitation only made the application as to the 2007 tax appeal timely. The Tax Court, recognizing that limitation, read a reasonableness exception into *Rule* 8:7(e), thus sustaining a two-month extension that was needed to make the motion timely as to the 2006 tax appeal. Plaintiff has not challenged either of these dismissals before the Appellate Division or this Court.

Plaintiff's arguments before this Court focus on the analysis used by the Appellate Division and on the scope of the relief that the panel granted to the municipality. In short, plaintiff argues that the Appellate Division failed to analyze the statute and the Court Rule correctly, interpreting them as if they were substantive rather than procedural. Plaintiff asserts that this approach resulted in the erroneous conclusion that the *Rule* provides an unlimited time within which to file the dismissal motion and led the panel to grant relief contrary to precedents established by this Court.

In contrast, defendant first contends that the Appellate Division's analysis of the clear and unambiguous language of the *Rule* was correct, and urges that we affirm the panel's conclusion that the time limitation did not apply to the motion to dismiss the 2005 tax appeal. Further, defendant asserts that the Appellate Division's direction that the tax appeal be dismissed did not conflict with this Court's holding in *Ocean Pines, supra,* 112 *N.J.* at 10–12, 547 *A.*2d 691, because the language of the Tax Court's order on appeal afforded plaintiff an opportunity to request a reasonableness hearing.

### III.

The issue raised in this appeal is a narrow one, arising in the context of a tax appeal that rests upon the taxpayer's submission of a "false or fraudulent" account.[3] Within that context, this appeal calls upon us to interpret the interplay between the statute commonly referred to as Chapter 91, *N.J.S.A.* 54:4–34, and our Court Rule, *R.* 8:7(e), that fixes time frames for filing of motions seeking to enforce that statute.

---

[3] The appeal arises only from our grant of defendant's motion for leave to appeal, as a result of which our focus is limited to the issues raised in that application. In that context, we note that because plaintiff did not cross-move for relief from any portion of the Tax Court's Order, it has not challenged that court's finding that plaintiff's Chapter 91 responses were false or fraudulent.

The statute, in relevant part, provides:

Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. *No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account.*

[*N.J.S.A.* 54:4–34 (emphasis added).]

*Rule* 8:7(e), entitled "Motions pursuant to N.J.S.A. 54:4–34," serves as the enforcement mechanism for this statute, providing:

*Except in the case of a false or fraudulent account,* all motions to dismiss for refusal or failure to comply with N.J.S.A. 54:4–34 shall be filed no later than the earlier of (1) 180 days after the filing of the complaint, or (2) 30 days before the trial date.

[*R.* 8:7(e) (emphasis added).]

The heart of the dispute before this Court is whether the 180–day limitation that *Rule* 8:7(e) imposes on the filing of motions for relief pursuant to the statute in the case of a taxpayer that fails or refuses to respond to a Chapter 91 request also limits the time for filing a dismissal motion based on a taxpayer's submission of a "false or fraudulent" response to a Chapter 91 inquiry. Deciding that question requires that we consider both the language and intent of the statute and the way in which our Court Rule operates to effectuate that intent.

### A.

We begin with the language of the statute, which is plain and unambiguous. It first requires every real property owner to respond to certain specified requests made by the tax assessor and to submit, if requested, to an examination under oath. *N.J.S.A.* 54:4–34. The statute next imposes a forty-five-day time limitation within which the taxpayer must respond, further providing that if

the taxpayer "fails or refuses" to do so within that time frame, or if the taxpayer "shall render a false or fraudulent account," the tax assessor is permitted to make his or her valuation of the property based on the information available. *Ibid.* The authority of the assessor in either circumstance is not unbounded, because it is qualified by the requirement that the assessor "reasonably determine ... the full and fair value" of the property. *Ibid.* Finally, as it relates to income-producing properties, if the taxpayer fails or refuses to respond within the permitted time frame, or if the taxpayer responds by submitting a false or fraudulent account, the statute provides that there shall be "no appeal" from the assessment. *Ibid.*

As initially enacted in 1918, *L.* 1918, *c.* 236, § 403, the statute applied to taxpayers generally, making no distinctions relating to whether the property was income-producing or not. The 1918 enactment described the assessor's estimate of the value of the property to be made in the absence of a response or in the case of a false or fraudulent account as being "at the highest value he has reason to suppose it may be placed." *Ibid.* The 1918 statute, however, did not impose any time limit on the taxpayer's obligation to respond to an assessor's request for information, or on the taxpayer's right to appeal an assessor's estimate. *Ibid.*

When the statute was amended in 1960, the Legislature expanded the list of the information required of the property owner by including disclosure of "income therefrom, in the case of income-producing property." *L.* 1960, *c.* 51, § 29. The 1960 amendment also added the language qualifying the assessor's right to estimate the value of the property if the taxpayer had not provided the requested information or had supplied a false or fraudulent account. The amendment, in place of the "highest value" language, *see L.* 1918, *c.* 236, § 403, substituted the requirement that the estimate be "reasonably determine[d] to be the full and fair value" based upon "any information in [the assessor's] possession or available to him." *L.* 1960, *c.* 51, § 29. Like the original enactment, the 1960 amendment did not limit the property owner's time

for submitting a response or the taxpayer's right to appeal such an assessment. *Ibid.*

It was not until the statute's most recent amendment, in 1979, that the Legislature added the language that is the focus of this appeal. The 1979 amendment added both the forty-five-day time for a taxpayer's response and the limitation on the taxpayer's right to appeal the assessor's valuation of the property if the owner failed to timely respond or rendered false or fraudulent information. *See L.* 1979, *c.* 91, § 1.

The 1979 amendment differs from the original bill submitted for the Senate's consideration. The original bill was only concerned with addressing a taxpayer's failure to respond to a tax assessor's request for information. Senate Bill No. 309 (pre-filed for 1978). As explained by the accompanying statement of its sponsor, the bill was designed to address the fact that under the existing statute, a taxpayer could withhold information by failing to respond, then file a tax appeal and confront the tax assessor at trial with the previously undisclosed information, leaving the assessor unable to adequately respond. Sponsor's Statement, *Statement to Senate Bill No. 309*, at 1–2 (pre-filed for 1978). Its proposed solution did not include a mandatory time within which the taxpayer was required to respond, instead imposing a limitation on an appeal if the taxpayer had not responded. Senate Bill No. 309 (pre-filed for 1978). According to the Sponsor's Statement, "[u]nder the provisions of this bill a hearing on an appeal from the assessor's valuation is precluded unless and until the required information is provided." Sponsor's Statement, *supra,* at 2.

The originally-filed bill was amended by the Senate Revenue, Finance and Appropriations Committee (Committee), which articulated the reasons for the amendment to the statute in more expansive language than that used by the Sponsor. The Committee explained its concerns as follows:

> While current statutes provide the assessor with a procedure whereby an assessment can be made notwithstanding the refusal of a property owner to provide income information, the property owner is not subject to any penalty for not disclosing property income information. The property owner is free to appeal the

assessment, notwithstanding his refusal to provide information which would have affected the valuation, and, perhaps, avoided the appeal from the assessment. Further, where an appeal has been filed, the assessor currently has no access to information on which the appellant is basing his appeal and thus the assessor is unprepared to testify in argument to the appellant's representations.

[Senate Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 309* (Jan. 26, 1978) (Committee Statement).]

In order to address the shortcomings in the existing statute, therefore, the Committee added the language imposing the obligation to respond within forty-five days and expanded the proposed limitation on a tax appeal to preclude such an appeal in the case of a false or fraudulent account as well. Senate Bill No. 309 (pre-filed for 1978) (second reprint). Echoing the concerns expressed by the Sponsor, the Committee stated that it had added the forty-five day limitation to create an "orderly procedure" for the timely receipt and consideration of information by the assessor.[4] Committee Statement, *supra*. The Committee did not comment on its decision to include the limitation on an appeal based on a false or fraudulent account beyond the explanation that some of the changes were "technical in nature, conforming the amendatory language to be consistent with existing language in this section of law." *Ibid.* The last part of the amendment added the requirement that the assessor enclose, as part of any written request for information, a copy of the statute. *See L.* 1979, *c.* 91, § 1. Although not specifically addressed in the legislative history, the inclusion of that requirement served to place the taxpayer on notice about the significant consequences of failing to respond or of responding with information deemed to be false or fraudulent.

In addition to the statutory commands, this Court has adopted *Rule* 8:7(e) to serve as the mechanism through which the municipality effectuates the relief that the statute affords. The *Rule* establishes certain procedural requirements for enforcing the stat-

---

[4] Although not relevant to the issue before the Court in this appeal, the Committee also added the language granting leave to the County Board of Taxation to extend the time for responding in the event that the owner was unable to comply with the time limitation.

ute by imposing a time limit on when the municipality's dismissal motion may be filed. The time limits set forth in the *Rule,* however, apply only to tax appeals in which the taxpayer has failed or refused to make a timely response to the Chapter 91 request. In language that is directly relevant to the dispute before this Court, *Rule* 8:7(e) explicitly begins with the admonition that the limitations shall apply "[e]xcept in the case of a false or fraudulent account." *R.* 8:7(e).

## B.

▮ This Court has previously considered the meaning and intent of the statutory prohibition on pursuing an appeal in the context of a taxpayer's failure or refusal to provide information about an income-producing property. *See Ocean Pines supra,* 112 *N.J.* at 7–10, 547 *A.*2d 691. In doing so, the Court considered the taxpayer's assertion, presumably based on the Sponsor's Statement that accompanied the original version of the 1979 amendment, that an appeal was not precluded, but was only deferred pending the taxpayer's submission of responses. Rejecting that argument, the Court noted that the statutory language is both clear and unambiguous in providing that the taxpayer's absolute failure to make any response to the Chapter 91 inquiry precluded it from pursuing its appeal. *Id.* at 9, 547 *A.*2d 691. However, this Court also considered whether the "strict enforcement" of the prohibition on an appeal could withstand constitutional challenges, concluding that the statute deprived the taxpayer of neither a substantive nor a procedural due process right. *Id.* at 9–10, 547 *A.*2d 691.

Although enforcing the statutory preclusion of a tax appeal, this Court interpreted the statute's requirement that the assessor's valuation be reasonable, even in the context of a taxpayer's failure to respond, as providing a limited avenue for relief for the taxpayer. *Id.* at 11, 547 *A.*2d 691. In doing so, however, we harmonized that remedy with the statute's clear preclusion of an ordinary tax appeal, pointing out that there were two significant

limitations on the reasonableness proceeding that the statute made available to the taxpayer.

We noted, first, that the taxpayer's appeal would be limited to a review of whether the valuation was reasonable, both as to the underlying data considered and the methodology utilized, in light of the information that was available to the assessor at the time of the assessment. *Ibid.* Second, this Court pointed out that because of the limited nature of that remedy, the taxpayer was entitled to specific discovery, but had no right to a plenary hearing. *Id.* at 11–12, 547 *A.2d* 691. We therefore concluded that the taxpayer would be barred from introducing the contrary proofs that it had withheld from the assessor so as to remain faithful to the statutory language generally precluding an appeal. *Id.* at 12, 547 *A.2d* 691.

Were we to simply consider this appeal in light of our decision in *Ocean Pines,* we would reach the same result that we did there, and for similar reasons. That is, nothing in the statutory expression about the consequence of submitting a false or fraudulent account is any less clear than the language we there considered relating to a taxpayer's failure or refusal to timely respond. Indeed, although the Sponsor's Statement provided the basis for arguing that the Legislature only intended to delay the hearing on an appeal until withheld information was supplied, there can be no suggestion about any similar intent when the information provided is false or fraudulent. Applying the clear and unambiguous language of the statute, we conclude that the Legislature intended that there be no appeal in those circumstances.

■ This appeal, however, asks us to look beyond our decision in *Ocean Pines* and to consider whether *Rule* 8:7(e), which was subsequently promulgated, imposes a time limitation that restricts the right of the municipality to move to dismiss a tax appeal based on a false or fraudulent account. We conclude that it does not. Instead, our *Rule* is entirely consistent with the statutory prohibition of a tax appeal in those circumstances in which the taxpayer has submitted a false or fraudulent account. The *Rule,* although

it imposes time limits on motions to dismiss filed by the municipality, explicitly exempts from its embrace any motion based on the filing of a false or fraudulent account. In light of that exception, the time limit set forth in *Rule* 8:7(e) does not apply to the matter now before this Court.

In spite of the clear language of our *Rule*, plaintiff argues that the appellate panel erred by concluding that applying it required the matter be dismissed in its entirety. *See Lucent Techs., supra,* 405 *N.J.Super.* at 266, 963 *A.*2d 1248. Plaintiff asserts that in remanding the matter to the Tax Court with directions to enter judgment in defendant's favor, the appellate panel interpreted the *Rule* to be substantive rather than procedural, contrary to this Court's holding in *Ocean Pines. See Ocean Pines, supra,* 112 *N.J.* at 11, 547 *A.*2d 691; *see also Paulison Ave. Assoc. v. Passaic City,* 18 *N.J. Tax* 101, 106–13 (Tax 1999). Defendant responds by arguing that because the Tax Court's order afforded plaintiff the opportunity for a reasonableness hearing in connection with the dismissal of the 2006 and 2007 tax appeals, that order would sufficiently protect plaintiff's rights once the denial of defendant's motion to dismiss the 2005 tax appeal was reversed.

We find nothing in the appellate panel's decision that suggests a misunderstanding about the procedural nature of the *Rule*, but we conclude that the language used to effect the statutory remedy is inconsistent with the relief we found was appropriate in *Ocean Pines.* That is, we do not read the statute's command that "no appeal shall be heard" to completely foreclose any remedy. Regardless of whether the taxpayer's shortcoming is its failure to respond to the Chapter 91 request in a timely manner or its submission of false and fraudulent information, we do not understand the Legislature to have intended, by precluding a tax appeal, to have permitted as a consequence the imposition of an unreasonable valuation or use of an unreasonable methodology. *Ocean Pines, supra,* 112 *N.J.* at 10–12, 547 *A.*2d 691. Instead, the language of the statute, which permits the harsh result of dismiss-

al, is itself tempered by the bedrock principle that all valuations be reasonable in light of the information with which the assessor was equipped. We conclude, as we did in *Ocean Pines*, that the complaint in the Tax Court should not be dismissed, but that the remedy available to the taxpayer must be one that is severely circumscribed.

We therefore conclude that the Appellate Division's judgment, to the extent that it directed the complaint to be dismissed in its entirety, was in error. In its place, we impose the same limited remedy that this Court concluded was available in *Ocean Pines*. We therefore vacate that portion of the panel's judgment that directed the Tax Court to dismiss the complaint and we remand this matter to the Tax Court for the limited purpose of conducting a reasonableness hearing in accordance with this opinion.

## IV.

The judgment of the Appellate Division, to the extent that it directed that the complaint be dismissed, is reversed and the matter is remanded to the Tax Court for further proceedings.

Justice ALBIN, concurring.

I concur with the Court's well-reasoned opinion, but add these few words.

A municipality, knowing that a taxpayer has filed a false Chapter 91 response, presumably will make a timely motion to dismiss a taxpayer's appeal. However, there may be cases in which a taxpayer inadvertently files false information and quickly attempts to remedy the mistake. I do not read the Court's opinion to preclude—in rare circumstances—the tax court from exercising its equitable powers to deny a municipality's dilatory motion to dismiss, provided the taxpayer does not have unclean hands. *See Knorr v. Smeal*, 178 *N.J.* 169, 836 *A.*2d 794 (2003) (applying equitable doctrines of estoppel and laches to deny defendant's dilatory motion to dismiss under Affidavit of Merit statute because defendant delayed fourteen months in filing motion, putting plain-

tiff through lengthy and expensive discovery during which defendant learned that plaintiff had meritorious cause of action).

Justice LONG joins in this opinion.

Justice RIVERA–SOTO, concurring.

Without reservation, I join Justice Hoens's clear and comprehensive opinion. I write separately, however, to place the concurrence submitted by Justice Albin in its proper context.

In Justice Albin's view, "there may be cases in which a taxpayer inadvertently files false information and quickly attempts to remedy the mistake." *Ante* at 251, 989 *A.*2d at 853. Having created that straw man, Justice Albin proceeds to knock it down, stating he "do[es] not read the Court's opinion to preclude—in rare circumstances—the tax court from exercising its equitable powers to deny a municipality's dilatory motion to dismiss, provided the taxpayer does not have unclean hands." *Ante* at 251, 989 *A.*2d at 853.

The scenario posed by Justice Albin, that is, the application of a plainly worded statutory remedy to instances where a taxpayer "inadvertently file[d] false information and quickly attempt[ed] to remedy the mistake" is entirely absent in this case. As Justice Hoens's opinion clearly sets forth, the taxpayer in the controversy presently before us filed clearly false and fraudulent responses to a tax assessor's request for income information under *N.J.S.A.* 54:4–34, a conclusion reached by the trial court that stands unchallenged on appeal. In that context, extrapolating legal principles needlessly past their proper context, as the concurrence does, has a name: it is dicta, something that "is unnecessary to the decision in the case and therefore not precedential[.]" *Black's Law Dictionary* 1100 (7th ed.1999).

Justice Albin's bogeyman is simply not present in this case. Any consideration of it lies outside of this case's decisional authority and belongs instead somewhere in the non-precedent netherworld of dicta.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Concurred*—ALBIN, LONG, RIVERA–SOTO.

*Opposed*—None.