TAX COURT OF NEW JERSEY

Joshua D. Novin
Judge



Washington & Court Streets, 1st Floor
P.O. Box 910
Morristown, New Jersey 07960-0190
Tel: (609) 815-2922, Ext. 54680
Fax: (973) 656-4305

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

March 22, 2018

Christopher John Stracco, Esq.[1]
Day Pitney, LLP
One Jefferson Road
Parsippany, New Jersey 07054

Scott G. Collins, Esq.
Riker Danzig Scherer Hyland Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

Martin Allen, Esq.
DiFrancesco, Bateman, Coley, Yospin,
  Kunzman, Davis, Lehrer & Flaum, P.C.
15 Mountain Boulevard
Warren, New Jersey 07059

> Re:  Alcatel-Lucent USA, Inc. v. Township of Berkeley Heights
>       Docket Nos. 004598-2014, 007688-2014 and 003166-2015

Dear Counsel:

This letter shall constitute the court's opinion, following: (i) the hearing on plaintiff's alleged "false or fraudulent account" in response to defendant's request for income and expense information under N.J.S.A. 54:4-34, commonly known as Chapter 91 (L. 1979, c. 91); and (ii) the

---

[1] During the hearings Alcatel-Lucent USA, Inc. was represented by Michael James Guerriero, Esq. Subsequent to conclusion of the hearings, and prior to the court's entry of this letter opinion, Mr. Guerriero retired from Day Pitney, LLP.

hearing on the reasonableness of the 2015 tax year local property tax assessment. At issue, is whether plaintiff's representative, in preparing and submitting his June 13, 2013 response to defendant's Chapter 91 request for income and expense information, inadvertently submitted incomplete or imperfect information, or intentionally omitted information, and thus, acted with unclean hands. Additionally at stake, is whether the data and methodology employed by defendant's tax assessor, in arriving at the subject property's 2015 local property tax assessment, was reasonable in light of the information available on the valuation date.

For the reasons explained more fully below, the court concludes that: (i) plaintiff's June 13, 2013 response to defendant's Chapter 91 request was a "false or fraudulent account," as such phrase was contemplated by our Legislature under N.J.S.A. 54:4-34; and (ii) plaintiff failed to satisfy its burden of proof, establishing that the subject property's 2015 local property tax assessment was unreasonable in light of the data and valuation methodology available to defendant's tax assessor.

Accordingly, the court: (i) grants defendant's motions to dismiss plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint, subject to plaintiff's right to a reasonableness hearing pursuant to Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1 (1988); and (ii) finds that the subject property's 2015 tax year assessment is reasonable, in light of the information available to defendant's tax assessor, and dismisses plaintiff's 2015 Tax Appeal Complaint.

## I. Findings of Fact and Procedural History

Alcatel-Lucent USA, Inc. ("plaintiff"), is the owner of the real property and improvements commonly known as 600 – 700 Mountain Avenue, in the Township of Berkeley Heights, County of Union, and State of New Jersey. The property is designated on the Township of Berkeley

2

Heights ("defendant"), municipal tax map as Block 3701, Lot 1 (the "subject property"). The subject property consists of approximately 1,500,000 square feet of improvements, comprising buildings and various other structures, situate on approximately 153.4 acres of real property. The subject property is plaintiff's United States headquarters housing administrative offices and research and development operations.

A. 2014 Tax Year

On June 1, 2013, defendant's tax assessor mailed plaintiff, by certified mail, return receipt requested, "a Chapter 91 request for income and expenses" (the "2013 Chapter 91 Request"). The 2013 Chapter 91 Request sought "the current income and expense data for the property identified on the attached forms." It further instructed the property owner to "submit a copy of the actual leases, rent rolls, and expense ledger, or use the attached forms in order to provide necessary information." As required under N.J.S.A. 54:4-34, the 2013 Chapter 91 Request notified the taxpayer that if the information sought was not furnished within 45 days, "you may be precluded from filing any tax appeal challenging the assessment of this property."

On June 13, 2013, plaintiff's corporate counsel, Lewis M. Lefkowitz, issued a two page written response to defendant's tax assessor stating, in part:

> I am writing in response to the letter from you to Alcatel-Lucent USA Inc. . . . dated June 1, 2013, requesting certain information regarding Block 3701, Lot 1. . . from the 'Property Owner' pursuant to N.J.S.A. 54:4-34.
>
> . . . the Property was conveyed by quitclaim deed dated June 29, 2001 from Alcatel-Lucent to LTI NJ Finance LLC and long term ground leased back to Alcatel-Lucent from LTI by lease from LTI also dated June 29, 2001. Under that Lease, Alcatel-Lucent is treated as the beneficial owner having all the rights (other than title) and obligations (including payment of real estate taxes) of an owner. LTI is a single member limited liability company, whose sole

3

member and 100% owner is Alcatel-Lucent. . . We therefore consider the property to be owner-occupied.

The Property is not income producing real estate as that term is commonly understood, although very small portions of the Property, totaling less [than] 1% of the building square footage, are occupied by Sychip, OFS Fitel, Wipro, and Garden Savings Federal Credit Union. Please note that Affinity Federal Credit Union vacated the Property effective December 31, 2011 and now only maintains an ATM on site for which it pays $300 monthly to Alcatel-Lucent . . . Although the payments by those occupants are insignificant, and irrelevant and immaterial in valuing the property, a schedule of those payments entitled MURRAY HILL, NJ 2012 RENTAL INCOME is attached.

Two wireless carriers pay monthly fees pursuant to license agreements to maintain cell sites on a[n] Alcatel-Lucent tower on the Property . . . Their payments are also reflected in the attached MURRAY HILL, NJ 2012 RENTAL INCOME.

Attached to Mr. Lefkowitz's June 13, 2013 letter was a document captioned "Alcatel-Lucent USA Inc. Murray Hill, NJ 2012 Rental Income" ("2012 Rental Income Report"), and a separate document captioned "Alcatel-Lucent 600 Mountain Avenue Murray Hill, NJ 2012 Operating Expense" ("2012 Operating Expense Report") (the June 13, 2013 letter, 2012 Rental Income Report and 2012 Operating Expense Report shall be collectively referred to as the "June 13, 2013 Response"). The 2012 Operating Expense Report itemizes 20 categories of expenses incurred by plaintiff for the subject property on a month-to-month basis, together with an annual reconciliation. The 2012 Rental Income Report reflects the gross "Rental Income" received by plaintiff on an annual basis from six "Subtenant[s]."

It is undisputed that plaintiff received defendant's 2013 Chapter 91 Request. It is further undisputed that defendant received plaintiff's June 13, 2013 Response.

Defendant's tax assessor placed a tax assessment on the subject property for the 2014 tax year, as follows:

4

                Land            $31,350,000
                Improvements $54,715,000
                Total           $86,065,000

Shortly thereafter, on July 24, 2013, plaintiff submitted an Application for Farmland Assessment, Woodland Data Form and detailed Forest Management Plan to defendant, seeking farmland tax assessment for the 2014 tax year on a portion of the subject property allegedly being used for the production of tree and forest products for sale ("2014 Farmland Assessment Application").

By notice dated August 19, 2013, defendant's tax assessor denied plaintiff's 2014 Farmland Assessment Application asserting that "agricultural use is not dominant use" ("2014 Farmland Assessment Denial Notice").

On March 13, 2014, plaintiff timely filed a Complaint with the Tax Court challenging the 2014 tax year assessment on the subject property ("2014 Tax Appeal Complaint").

On March 28, 2014, plaintiff timely filed a Complaint with the Tax Court challenging the 2014 Farmland Assessment Denial Notice for the subject property ("2014 Farmland Assessment Complaint").

B. 2015 Tax Year

On June 1, 2014, defendant's tax assessor mailed plaintiff, by certified mail, return receipt requested, "a Chapter 91 request for income and expenses" (the "2014 Chapter 91 Request"). The 2014 Chapter 91 Request sought "income and expense data" for the subject property. It further instructed the property owner that it may "submit a copy of the actual leases, rent rolls, and expense ledger; or use the enclosed forms in order to provide the requested information." As required under N.J.S.A. 54:4-34, the 2014 Chapter 91 Request notified the property owner that if the

5

information sought was not furnished within 45 days, "you may be precluded from filing any tax appeal challenging the assessment of this property."

Accompanying the 2014 Chapter 91 Request, was a reproduction of N.J.S.A. 54:4-34, a form captioned "Annual Statement of Business Income and Expenses Commercial Properties," a form captioned "Instructions for Completion of Schedule A" and a rental schedule form captioned "Schedule A".

It is undisputed that the 2014 Chapter 91 Request was received by plaintiff. It is further undisputed that plaintiff did not furnish any response to the 2014 Chapter 91 Request, nor did it notify defendant of any difficulties encountered in responding to the 2014 Chapter 91 Request.

Thereafter, on July 24, 2014, plaintiff submitted an Application for Farmland Assessment, Woodland Data Form and detailed Forest Management Plan to defendant, seeking farmland tax assessment for the 2015 tax year on a portion of the subject property allegedly being used for the production of tree and forest products for sale (the "2015 Farmland Assessment Application").

By notice dated August 11, 2014, defendant's tax assessor denied plaintiff's 2015 Farmland Assessment Application asserting that "agricultural use is not dominant use" ("2015 Farmland Assessment Denial Notice").

Accordingly, defendant's tax assessor placed an assessment on the subject property for the 2015 tax year, as follows:

| Land | $31,350,000 |
|------|-------------|
| Improvements | $54,715,000 |
| Total | $86,065,000 |

On March 17, 2015, plaintiff timely filed a Complaint with the Tax Court challenging the 2015 tax year assessment on the subject property ("2015 Tax Appeal Complaint").

On March 31, 2015, plaintiff timely filed a Complaint with the Tax Court challenging the 2015 Farmland Assessment Denial Notice for the subject property ("2015 Farmland Assessment Complaint").

C. <u>Motions to Dismiss</u>

Defendant filed motions seeking dismissal of plaintiff's: (i) 2014 Tax Appeal Complaint; (ii) 2014 Farmland Assessment Complaint; (iii) 2015 Tax Appeal Complaint; and (iv) 2015 Farmland Assessment Complaint.

Defendant charged in its motions that plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint must be dismissed because plaintiff's June 13, 2013 Response constituted a "false or fraudulent account" in reply to the 2013 Chapter 91 Request. Specifically, defendant asserted that, "[d]uring the course of discovery it became apparent that the subject property is not owner occupied and that the subject property's 2012 rental income was substantially higher than the one provided in the Chapter 91 response." Defendant highlighted that in response to discovery requests, plaintiff disclosed that its 2012 rental income was "$1,153,994.77 and not $960,639.23 as stated in their Chapter 91 response." The approximate $193,355.54 income discrepancy apparently arose from the omission of fees paid plaintiff by LGS Innovations, its wholly owned subsidiary, for occupying a portion of the subject property.

Defendant further maintained that plaintiff's June 13, 2013 Response mischaracterized the subject property as "owner-occupied," when "it is clear" from defendant's "review of the leases provided in discovery" that "the subject property is income producing." Thus, defendant argued that the June 13, 2013 Response was a "false or fraudulent account," thereby precluding plaintiff from pursuing its 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint, subject only to a reasonableness hearing.

7

Defendant further contended that plaintiff's 2015 Tax Appeal Complaint and 2015 Farmland Assessment Complaint must be dismissed because plaintiff failed to respond to the 2014 Chapter 91 Request. Defendant maintained that plaintiff is precluded from advancing the causes of action raised in the 2015 Tax Appeal Complaint and 2015 Farmland Assessment Complaint as a result of its failure to respond to the 2014 Chapter 91 Request, subject only to a reasonableness hearing.

On September 8, 2016, this court issued a letter opinion granting defendant's motions to dismiss plaintiff's 2015 Tax Appeal Complaint and 2015 Farmland Assessment Complaint, as a result of plaintiff's failure to respond to defendant's 2014 Chapter 91 Request, subject to a reasonableness hearing pursuant to Ocean Pines Ltd., 112 N.J. 1.[2] However, the court reserved decision on defendant's motions to dismiss plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint pending the outcome of a hearing on whether the June 13, 2013 Response constituted a "false or fraudulent account," as contemplated by our Legislature, under N.J.S.A. 54:4-34. The court's Orders directed the parties to engage in discovery and set a date for the reasonableness hearing and "false or fraudulent account" hearing.

## II. Conclusions of Law

In response to concerns that property owners were "not subject to any penalty" for refusing, or failing to disclose economic information for income-generating properties to tax assessors prior to setting local property tax assessments, in 1979 our Legislature amended N.J.S.A. 54:4-34 (L. 1979, c. 91). Lucent Technologies, Inc. v. Township of Berkeley Heights, 201 N.J. 237, 246

---

[2] Plaintiff subsequently advised the court that it did not want to pursue a reasonableness hearing with respect to the 2015 Farmland Assessment Complaint. Accordingly, on October 11, 2016, the court entered a final Order dismissing plaintiff's 2015 Farmland Assessment Complaint. A Notice of Appeal of the court's October 11, 2016 final Order was filed with the court on October 20, 2016.

(2010) (quoting Senate Revenue, Finance and Appropriations Committee, <u>Statement to Senate Bill No. 309</u> (January 26, 1978)). To address what was perceived as "the shortcomings in the existing [N.J.S.A. 54:4-34] statute," the amendment imposed an "obligation [on property owners] to respond within forty-five days" to requests for income and expense information. <u>Id.</u> at 247. Thus, Chapter 91 was born from the notion that an assessor must be afforded reasonable access to the economic records of an income-producing property, thereby enabling the assessor to reasonably arrive at a fair assessment, and potentially "avoid[ing] unnecessary expense, time and effort" which may result in any ensuing local property tax appeal litigation. <u>Ocean Pines, Ltd.</u>, 112 N.J. at 7 (quoting <u>Terrace View Gardens v. Township of Dover</u>, 5 N.J. Tax 469, 474-75 (1982)). Accordingly, Chapter 91 exemplifies the public policy considerations "of having assessors formulate assessments by using information from the 'best available source,' the property owner." <u>Tower Center Associates v. Township of East Brunswick</u>, 286 N.J. Super. 433, 438 (App. Div. 1996) (quoting <u>Terrace View Gardens</u>, 5 N.J. Tax 469, 472 (Tax 1982), <u>aff'd o.b.</u>, 5 N.J. Tax 475 (App. Div. 1983)).

As amended, N.J.S.A. 54:4-34 provides:

> Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or

fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section

[N.J.S.A. 54:4-34.]

In Ocean Pines, our Supreme Court fashioned the remedy available for income-producing property owners who have failed to comply with requests for economic information under Chapter 91. The Court explained that a property owner is "entitled to appeal the valuation . . . , but any such appeal is sharply limited in both its substantive and procedural aspects." Ocean Pines, Ltd., 112 N.J. at 11. Thus, the focus of a trial court's substantive inquiry at such hearing centers on "whether the [assessed] valuation could reasonably have been arrived at in light of the data available to the assessor at the time of the valuation." Ibid. Embodied within that inquiry is: "(1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation." Ibid.

A. Reasonableness Hearing

A reasonableness hearing should "not include plenary proofs as to the value of the property under appeal but only proofs as to whether the assessment imposed by the assessor was reasonable." Lucent Technologies, Inc., 24 N.J. Tax at 308. In gauging the reasonableness of a tax assessment, "[b]oth the underlying data and the methodology used by the assessor are entitled to [a] presumptions of correctness." 510 Ryerson Road, Inc. v. Borough of Lincoln Park, 28 N.J. Tax 184, 193 (Tax 2014). This standard "is less stringent than the standard applicable in the context of a plenary valuation hearing for purposes of determining whether a presumption of validity attaches to an assessment." Lucent Technologies, Inc., 24 N.J. Tax at 312. This is because

Chapter 91 "requires only that the assessor 'reasonably determine' the value of a property" based on data and information available to the assessor at the time of valuation. Id. at 297.

During a reasonableness hearing, the taxpayer must "produce evidence that is definite, positive and certain in quality and quantity in order to overcome [the presumption of correctness]." Ocean Pines, Ltd., 112 N.J. 12 (quoting Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 105 (1952)). The taxpayer shoulders the burden of proving that "the methodology utilized in [arriving at] the original assessment manifested an arbitrary or capricious discharge of the assessor's responsibilities" and "provide[d] no reliable indication that the quantum of the assessment [was] itself reasonable." Transcontinental Gas Pipeline Corp. v. Bernards Township, 111 N.J. 507, 538 (1988). It is not enough for the taxpayer to merely show that the methodology employed by the tax assessor was flawed or imperfect, the taxpayer must demonstrate that the manner in which the assessment was arrived at was arbitrary and capricious. Pantasote Co. v. Passaic, 100 N.J. 408, 417 (1985).

Here, plaintiff charges that the 2015 local property tax assessment was arbitrary, capricious and unreasonable, because: (1) defendant's tax assessor violated the Handbook for New Jersey Assessors, by failing to have an appraisal report commissioned that offered an opinion of the true market value the subject property, as of the October 1, 2014 valuation date; (2) defendant's assessor failed to determine the true market value of the subject property, as of the October 1, 2014 valuation date by engaging in either the sales comparison, replacement reproduction, or income capitalization approaches to value; and (3) the subject property's 2014 local property tax assessment was erroneous therefore; carrying forward the 2014 tax year assessment to the 2015 tax year, was arbitrary and capricious.

In support of these arguments, plaintiff presented the testimony of Thomas Welsh, a State of New Jersey certified general real estate appraiser, who was accepted by the court as an expert in the field of real estate appraising.[3]  In Mr. Welsh's opinion, the defendant's assessor acted in an unreasonable manner in the following respects:

1.      The assessor failed to undertake an independent investigation of the subject property to verify the accuracy of the information contained in the assessor's files;

2.      The assessor failed to determine the full and fair value of the subject property by commissioning an appraisal report, or using one of the three generally accepted approaches to value;

3.      The subject property's 2014 local property tax assessment was erroneous therefore; the 2015 local property tax assessment was erroneous.

Voir dire disclosed that Mr. Welsh is a certified general real estate appraiser, has served as an appraisal expert in court, and has instructed courses regarding the appraisal of real property. However, Mr. Welsh readily acknowledged that, he is not a certified tax assessor, has never served as municipal tax assessor, and during his career has never been employed in a municipal tax assessor's office.  Therefore, his opinions as to reasonableness of the procedures employed by defendant's assessor in setting the subject property's 2015 local property tax assessment, and defendant's assessor's reliance upon data and information contained in his files, were based solely on his experience as an appraiser, and not as a certified tax assessor.

Mr. Welsh's testimony primarily focused on concerns regarding calculation of the subject property's 2014 local property tax assessment, including the analysis performed by defendant's appraisal expert.  In Mr. Welsh's opinion, the November 5, 2013 analysis prepared by defendant's appraiser, and relied on by defendant's assessor to assist him in establishing the subject property's

---

[3] The court declined to accept Mr. Welsh as an expert Certified Tax Assessor, or as an expert in the field of real estate assessing practices and procedures, and placed a statement of reasons on the record.

2014 local property tax assessment, was flawed. Mr. Welsh believed that the areas of the building demolished in late 2013 were lab space, and therefore should have been attributed a greater value, resulting in a lower tax assessment for the 2014 tax year. In Mr. Welsh's opinion, in order to "determine the value" of real property, under N.J.S.A. 54:4-35.1, an appraisal report is required. Moreover, Mr. Welsh's testimony highlighted that the Uniform Standards of Professional Appraisal Practice, applicable to appraisers and the preparation of appraisal reports, requires an appraiser to independently verify the square footage of an improvement existing on a property, and not rely upon unqualified third-party information.

However, Mr. Welsh was not qualified to offer any fact or opinion testimony regarding municipal tax assessing practices, or why defendant's assessing practices, as applied to the subject property, resulted in an arbitrary or capricious discharge of the assessor's responsibilities. Moreover, Mr. Welsh did not offer any testimony regarding significant marketplace changes between the 2014 valuation date and 2015 valuation date that were not considered by defendant's assessor in establishing the subject property's 2015 local property tax assessment. Mr. Welsh did not present any evidence that material alterations were made to the improvements on the subject property between the 2014 valuation date and 2015 valuation date. In sum, Mr. Welsh could not offer any testimony or evidence that it was unreasonable to have arrived at the subject property's 2015 local property tax assessment in light of the data available to defendant's assessor at the time of the valuation.

Our courts have recognized the practical limitations faced by tax assessors in re-measuring, re-appraising, and personally inspecting each property in a municipality, every year to determine its full and fair value, under N.J.S.A. 54:4-23. These limitations "preclude most assessors [from] reviewing every assessment line item every year. . . ." Tri-Terminal Corp. v. Borough of

13

Edgewater, 68 N.J. 405 (1975)). However, assessors must nonetheless be sensitive and "alert[] to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district." Ibid. Thus, the focus of the court's inquiry centers on whether the valuation of the property, and determination of the tax assessment, was reasonably related to sound assessment practices, based on reasonable data and information, was sensitive to changing market conditions, considered physical factors uniquely applicable to the property, or did it "manifest[] an arbitrary or capricious discharge of the assessor's responsibilities." Transcontinental Gas Pipeline Corp., 111 N.J. at 538.

A taxpayer has failed to meet the requisite burden of proof by relying upon the assessor's continuation of a prior years assessment, or the failure of an assessor to re-inspect, "re-measure and re-appraise each property. . . for purposes of determining the proper assessment." Lucent Technologies, Inc., 24 N.J. Tax at 312. Although these type of flaws would likely render the trial testimony of an appraiser inadequate, the role of an assessor "is different and distinguishable from the role of the appraiser," and does not serve as prima facie evidence that a tax assessment is arbitrary or capricious. Ibid. See also 510 Ryerson Rd., Inc., 28 N.J. Tax at 196 (local property assessment is not unreasonable even if assessor did not "independently verify" information on rents and did not personally inspect the property, and adopted the values recommended by the revaluation company based on an income approach); Waterside Villas Holdings, LLC v. Monroe Township, 2012 N.J. Tax Unpub. LEXIS 22 (Tax 2012) (rejecting the taxpayer's argument that "an assessment based on a valuation using the income approach is unreasonable and arbitrary if the assessor cannot demonstrate that he reviewed market rents at the time of the assessment"), aff'd, 434 N.J. Super. 275, 279 (App. Div. 2014).

Thus, employing an imperfect assessment methodology, failing to personally inspect a property, or declining to obtain an appraisal report does not result in a tax assessment being per se arbitrary and capricious. Provided that the tax assessor has "reasonably determine[d]. . . the full and fair value" of a property based upon "any information in [the assessor's] possession or available to [the assessor]," the local property tax assessment will generally withstand judicial scrutiny under the content of a reasonableness hearing. N.J.S.A. 54:4-34.

Here, the record discloses that Robert J. Edgar, CTA began serving as defendant's municipal tax assessor in 2009. Mr. Edgar is a Certified Tax Assessor ("CTA"), and earned his CTA designation in 1974. Mr. Edgar credibly testified that, in his role as municipal assessor, he has become familiar with the subject property, and personally inspected the subject property in 2013, and again in January 2014.

Mr. Edgar's testimony further revealed that on or about December 23, 2013, his office received a letter from plaintiff's counsel advising that subsequent to the October 1, 2013 valuation date "the subject property and/or improvements have undergone significant alteration and demolition, thereby reducing the usable square footage of the subject property." Thus, pursuant to N.J.S.A. 54:4-35.1, and prior to finalizing his 2014 tax year assessment roll, on or about February 1, 2014, he reduced the subject property's 2014 local property tax assessment by approximately 14% to account for a corresponding reduction in the building area. According to Mr. Edgar, in determining the subject property's 2014 local property tax assessment he relied on a November 5, 2013 analysis prepared by defendant's appraiser. The appraiser's analysis considered the impact of demolition of portions of the improvements on the subject property during the 2013 tax year.

15

Moreover, Mr. Edgar testified that the subject property's 2015 tax year assessment was ostensibly "a carryover from the 2014 [tax] assessment." He credibly offered that based on his review of his files and records, "there was no significant change in the property for which I would need to change the assessment" from the 2014 to 2015 tax years. He further offered that defendant's building department provides his office with copies of building permits and certificates of occupancy that are issued in the municipality during the preceding year. However, he received no documents from the building department or from any other sources disclosing that any structural alterations were undertaken on the subject property after the 2014 local property tax assessment was finalized.

Additionally, in Mr. Edgar's opinion, there were no material changes in the real estate market, or in defendant's Chapter 123 ratio, warranting an adjustment of the subject property's 2015 local property tax assessment. Based on his review of the records and files in his office, Mr. Edgar concluded that the subject property's 2015 local property tax assessment was reasonable.

Here, plaintiff failed to demonstrate that the subject property experienced any material changes following determination of the 2014 tax year assessment, and prior to setting the 2015 tax year assessment that Mr. Edgar failed to consider. Additionally, plaintiff did not offer any information that there was overwhelming market data on the valuation of corporate headquarter campuses that Mr. Edgar ignored. Although Mr. Edgar's action of carrying forward the subject property's 2014 tax year assessment to the 2015 tax year could be characterized as imperfect, the record fails to disclose that Mr. Edgar acted in either an unreasonable, arbitrary, or capricious manner in carrying out his duties or in arriving at the subject property's 2015 tax assessment. As Judge Menyuk keenly observed, the court is "unaware of any decision holding that the carrying over of an assessment from one year to the next is per se unreasonable." Waterside Villas

16

Holdings, LLC, 2012 N.J. Tax Unpub. LEXIS 22 (Tax 2012), aff'd, 434 N.J. Super. 275, 279 (App. Div. 2014).

Accordingly, for the foregoing reasons, the court concludes that plaintiff has failed to prove that the subject property's 2015 local property tax assessment was unreasonable and unrelated to true value, or derived from a patently arbitrary and capricious methodology.

B. False or fraudulent account

In its motion, defendant maintained that plaintiff's omission of the LGS Innovations income from the 2012 Rental Income Report rendered the June 13, 2013 Response a knowing misrepresentation. Additionally, defendant asserted that plaintiff's June 13, 2013 Response "intentionally misrepresent[ed] that the [subject] property is not income producing . . . by stating that the property is not [sic] owner-occupied." Thus, defendant argued that plaintiff's June 13, 2013 Response was a "false or fraudulent account," as such phrase was contemplated under N.J.S.A. 54:4-34, necessitating dismissal of plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint.

Conversely, plaintiff advocated for the court to weigh and consider the taxpayer's purpose, intent, and objectives in furnishing a timely answer and documents responsive to defendant's 2013 Chapter 91 Request, before concluding that it is a "false or fraudulent account" under N.J.S.A. 54:4-34.

By letter opinion dated September 8, 2016, this court evaluated the plain and express language of Chapter 91, the generally accepted meaning ascribed to the statutory words, the intent of our Legislature in enacting Chapter 91, and case law offering insight into the statutory text of Chapter 91. Ultimately, the court concluded that in enacting Chapter 91 our Legislature did not intend taxpayers to face the harsh appeal preclusion consequences when a timely, good faith

17

response to a Chapter 91 request was furnished, which may have mistakenly, inadvertently, or unintentionally excluded, overstated, or understated income and expense information or property information.

Therefore, the court concluded that by conducting a hearing, the court would be in the best position to weigh and assess issues of credibility of the party offering the information and to discern their purpose, intent, and/or motivation. Moreover, if following the hearing, the court discerned that the taxpayer had unclean hands because its Chapter 91 response intentionally excluded information known to the respondent, was designed to be misleading, or was deliberately calculated to obtain an advantageous tax assessment, dismissal of the taxpayer's appeal would be warranted, subject to an Ocean Pines Ltd. reasonableness hearing. In contrast, if the court was able to deduce from the evidence presented that the taxpayer timely furnished a good faith response to a Chapter 91 request and accidentally, mistakenly, or inadvertently omitted information, and timely rectified such omission; and said information was otherwise inconsequential in fixing the local property tax assessment, the court can exercise its equitable powers and deny a municipality's motion to dismiss. Accordingly, the court set down the matter for a hearing on whether plaintiff's June 13, 2013 Response constituted a "false or fraudulent account" under Chapter 91.

During the hearing, testimony was offered by plaintiff's former Senior Counsel, Real Estate, Lewis Lefkowitz. Mr. Lefkowitz was the individual charged with preparing a response to defendant's 2013 Chapter 91 Request and signed the June 13, 2013 Response. As plaintiff's Senior Counsel, Real Estate, Mr. Lefkowitz was responsible for furnishing counsel and advice to plaintiff involving the sale, lease, licensure, and disposition of all real property interests. Thus, Mr. Lefkowitz was responsible for overseeing any licenses, leases, lease modifications, lease renewals, and lease amendments involving the subject property.

18

Based on his approximately eleven years of service with plaintiff, Mr. Lefkowitz was familiar with a taxpayer's responsibility to furnish income and expense information in response to a Chapter 91 request. Moreover, Mr. Lefkowitz credibly testified that he was aware a court could impose penalties on a taxpayer for failing to timely furnish a response, or for offering a response that was false or fraudulent. Admittedly, in preparing his June 13, 2013 Response, Mr. Lefkowitz did not conduct any independent investigation to verify the accuracy of the 2012 Rental Income Report. Instead, Mr. Lefkowitz asked a representative of plaintiff's real estate department to furnish him with a list of the income received from all third-party occupants on the subject property during the 2012 calendar year and relied on that representative's diligence.

Mr. Lefkowitz acknowledged that the 2012 Rental Income Report did not include the income paid to plaintiff by LGS Innovations, its wholly owned subsidiary. Mr. Lefkowitz explained that LGS Innovations was originally known as Lucent's Government Services unit, handling contracts between Lucent Technologies, Inc. and the United States government. However, when Lucent Technologies, Inc. merged with French company Alcatel in 2006, as a condition of the merger, the United States government required that those government contracts be maintained by a separate, wholly owned subsidiary of plaintiff, LGS Innovations.

According to Mr. Lefkowitz, although he was readily aware that LGS Innovations exclusively occupied a portion of the subject property, he:

> purposefully excluded LGS [from the 2012 Rental Income Report] because they were a wholly owned subsidiary, it would have been misleading to include them, because at the Alcatel-Lucent level it was a wash, the subsidiary was paying rent to the parent but at the parent level it was a wash because its an expense for the subsidiary that's carried up to the parent . . . so it's the left pocket paying the right pocket, there was no income whatsoever to Alcaltel-Lucent Inc. (emphasis added)

19

> And furthermore, . . . each division, each unit of Alcatel-Lucent got charged back for occupying space in the property . . . and we were doing the same thing for LGS, we just formalized it, so there was no difference in my mind . . . since they were all units or subsidiaries of Alcatel-Lucent USA Inc. and it was all a wash at the property owner level, which was the one responding to this [Chapter 91] inquiry.

Mr. Lefkowitz offered that he intended his June 13, 2013 Response to be "truthful" and "as complete and accurate as possible. . . ." In his opinion, it would have been inaccurate and misleading to include the fees paid by LGS Innovations to plaintiff on the 2012 Rental Income Report because it was a payment made by a wholly-owned subsidiary of Alcatel-Lucent, Inc., and not arms-length rental income. In Mr. Lefkowitz's estimation, because the amounts paid by LGS Innovations to plaintiff were the functional equivalent of plaintiff assessing a chargeback to other units or divisions for occupying space in the subject property, no income was actually being realized by plaintiff.

Testimony was also elicited during the hearing from Robert J. Edgar, CTA, defendant's municipal tax assessor. Mr. Edgar testified that he received and reviewed Mr. Lefkowitz's June 13, 2013 letter and attachments in response to his 2013 Chapter 91 Request. However, in Mr. Edgar's opinion, the June 13, 2013 Response was not "terribly relevant" to establishing the market value of the subject property for the 2014 tax year. Mr. Edgar did not rely on, nor consider the June 13, 2013 Response material in establishing the assessed value of the subject property for the 2014 tax year. In Mr. Edgar's opinion, because LGS Innovations was occupying only a small percentage of the subject property, he would not have given its ascribed rental rate much weight in determining the 2014 local property tax assessment on the subject property.

Admittedly, Mr. Edgar did not perform an income capitalization approach to arrive at an estimated market value for the subject property for the 2014 tax year. Thus, he did not rely on any

20

of the information reported on plaintiff's 2012 Rental Income Report in fixing the subject property's 2014 local property tax assessment. Instead, Mr. Edgar offered that the 2014 local property tax assessment was carried forward from the 2013 local property tax assessment, and adjusted downward to account for demolition of a portion of the improvements on the subject property, based on the recommendations of defendant's appraiser.

However, Mr. Edgar explained that despite his conclusion that the 2012 Rental Income Report was not material in fixing the subject property's 2014 local property tax assessment, he nevertheless regularly uses information disclosed in response to Chapter 91 requests to assist him in fixing other local property tax assessments in the municipality.

As previously stated, Chapter 91 was enacted in response to concerns that property owners were "'not subject to any penalty for not disclosing property income information.'" Lucent Technologies, Inc., 201 N.J. at 246 (quoting Senate Revenue, Finance and Appropriations Committee, Statement to Senate Bill No. 309 (January 26, 1978)). To address what was perceived as "shortcomings," N.J.S.A. 54:4-34 was amended to impose "the obligation [on a taxpayer] to respond within forty-five days" to a request for property income and expense information. Id. at 247.

Thus, a goal of Chapter 91 was to afford municipal tax assessors access to financial information thereby permitting them to reasonably arrive at a fair assessment, thereby potentially "avoid[ing] unnecessary expense, time and effort" which may result in any ensuing local property tax appeal litigation. Ocean Pines, Ltd., 112 N.J. at 7 (quoting Terrace View Gardens, 5 N.J. Tax at 474-75). Hence, Chapter 91 exemplifies fundamental public policy purposes of ensuring uniformity in tax assessments and an equal sharing of the tax burden by "having assessors formulate assessments by using information from the 'best available source,' the property owner."

21

Tower Center Associates, 286 N.J. Super. at 438 (quoting Terrace View Gardens, 5 N.J. Tax at 472).

However, for Chapter 91 to have any meaningful impact on the accurate formulation of local property tax assessments, taxpayers must timely, and accurately, adhere to the information disclosure requirements. When the taxpayer has failed to timely furnish a response to a valid Chapter 91 request, or has furnished a response that is a false or fraudulent account, Chapter 91 affords our trial courts the authority to dismiss the taxpayer's cause of action, subject to the right to a reasonableness hearing. N.J.S.A. 54:4-34; Ocean Pines, Ltd., 112 N.J. at 11.

Here, testimony was elicited from taxpayer's representative that he "purposefully excluded" the sums paid by LGS Innovations because it was "a wholly owned subsidiary," and in his opinion, "it would have been misleading to include them. . . ." Although taxpayer's representative knew that penalties could be imposed for failing to timely furnish a response, or for offering a response that was a "false or fraudulent account," he nonetheless intentionally and purposefully excluded certain income information from the 2012 Rental Income Report. In his opinion, disclosure of the amounts paid by LGS Innovations to occupy a portion of the subject property would be an inaccurate representation of income, because they were the functional equivalent of chargebacks, similarly assessed against other units or divisions of plaintiff.

However, the willful or intentional exclusion of income or expense information by a taxpayer offends the fundamental goals and purposes sought to be achieved by Chapter 91. As stated above, the essence of Chapter 91 is to provide a mechanism for tax assessors to evaluate a property's economic records in order to arrive at a fair tax assessment, thereby avoiding potentially costly tax appeal litigation. Regardless of the taxpayer's motivations in refusing to furnish information, a response that purposefully or intentionally excludes income information known to

the taxpayer or its representative renders the response a "false or fraudulent account" under N.J.S.A. 54:4-34. The court cannot condone the purposeful or knowing omission of rental income information about an income-producing property.

Despite Mr. Lefkowitz's opinion or belief that disclosure of the payments made by LGS Innovations to plaintiff would be misleading because they involved inter-company transfers, he nevertheless bore a duty to disclose such information to defendant. The taxpayer must disclose all income and expense information responsive to a valid and timely Chapter 91 request and permit the tax assessor to gauge what weight to accord such information. Although the ownership of real property by one entity and concomitant leasing of that property to a related entity "may reduce the usefulness of the income accounting required by the statute . . . some or all of it may have utility, and it is up to the assessor and not the taxpayer to decide whether to consider the information furnished." SKG Realty Corp., 8 N.J. Tax 209, 211 (App. Div. 1985). Here, by intentionally and purposefully excluding the payments made by LGS Innovations to plaintiff from the 2012 Rental Income Report, Mr. Lefkowitz deprived defendant's tax assessor of the opportunity to evaluate all of the income information before determining the subject property's 2014 local property tax assessment.

Although Mr. Edgar acknowledged that he accorded the 2012 Rental Income Report little weight, the taxpayer cannot act as a filter of financial information, determining what material is, and is not, probative in discerning the local property tax assessment. Tax assessors bear the constitutional duty and statutory obligation to determine the full and fair value of each property, as of October 1 of the pre-tax year, consistent with the purpose of securing a uniform standard of value of all property within the taxing district. See N.J. Const. art. VIII, § 1, ¶ 1(a); N.J.S.A. 54:4-23. The goal of Chapter 91 is to provide tax assessors with access to information to fulfill these

obligations. "The purpose of N.J.S.A. 54:4-34 is to assist the assessor, in the first instance, to make the assessment and thereby hopefully to avoid unnecessary expense, time and effort in litigation." Terrace View Gardens, 5 N.J. Tax 471-472.

Here, the taxpayer "purposefully excluded" payments made by LGS Innovations to plaintiff from the June 13, 2013 Response to defendant's 2013 Chapter 91 Request. Said knowing and intentional conduct does not amount to a mistaken or inadvertent submission of false or incorrect information. Moreover, it does not comprise a response, made in good faith, to a Chapter 91 request that inadvertently excluded, overstated, or understated property or income and expense information. Although the record before the court does not reveal that plaintiff's response was deliberately designed to deceive defendant, the intentional omission of the payments by LGS Innovations to plaintiff from the June 13, 2013 Response was planned, purposeful, and intentional and therefore, constituted a "false or fraudulent account" under N.J.S.A. 54:4-34.

Accordingly, the court grants defendant's motions to dismiss plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint, subject to plaintiff's right to a reasonableness hearing pursuant to Ocean Pines, Ltd.

### III. Conclusion

For the foregoing reasons, defendant's motions to dismiss plaintiff's 2014 Tax Appeal Complaint and 2014 Farmland Assessment Complaint are granted, subject to a reasonableness hearing. Orders reflecting this opinion will be simultaneously entered herewith.

Very truly yours,


/s/Hon. Joshua D. Novin, J.T.C.